CITY OF SPRINGFIELD, MISSOURI, a Municipal Corporation, Appellant, v. HARRY CLOUSE, ROBERT LAXTON, OTTO BOWLES, R. F. WALTERS, O. F. BRUHN, C. O. SCROGGINS, T. J. MUSGRAVE, FRED GUINN, JAMES K. GILMORE, GENE PARSONS, J. FRANK CLINE, LESTER WIMMER, RALPH HOLLY, E. J. BARRETT, M. E. TABER, and RICHARD GROOM.—No. 40127.—206 S. W. (2d) 539.

Court en Banc, November 10, 1947.

1240

*Theodore Beezley* and *A. P. Stone, Jr.,* for appellant.

1242

1244

*Clif Langsdale, Clyde Taylor,* and *William Moon* for respondents.

*David M. Proctor* and *Forest Hanna* for City of Kansas City, amicus curiae.

HYDE, J.—This is a declaratory judgment action seeking determination of the legal power of the City to make collective bargaining contracts, with labor unions representing city employees, concerning wages, hours, collection of union dues, and working conditions. Defendants are officers and representatives of the unions involved. The trial court declared that Section 29 of Article I of the 1945 Constitution applied to municipal employees but that the City had no lawful power to enter into any of the proposed contracts. All parties have appealed from the trial court's decree.

The trial court's decree declared "that the City has no lawful power to enter into any of said contracts as proposed, for the following reasons: 1. They all provide for a fixed basic wage for a stated length of time, which if agreed to by the City would be an abdication of its power to increase or diminish wages at any time, as provided by Sec. 6659. (All references to statutes are to R. S. 1939 and Mo. Stat. Ann. unless otherwise stated.) 2. They all provide for payment at an increased hourly rate for all time worked over a stated amount per day or per week, in violation of Section 6672 which provides that employees shall be paid a fixed salary or wage. 3. In all of the contracts proposed one of the contracting parties is a labor union, which is an unincorporated association, which cannot sue or be sued, and hence any contract made with such a union would not be enforceable by any proceeding known to the law. 4. The first two contracts provide for a closed shop, that is the employment only of union members, and the third contract, while not so drastic, gives a preference to union members in the selection of employees, all of which is in violation of the civil service laws, Sections 6678-6688. 5. The fourth contract contains no covenants of any kind on the part of the employees and no consideration moving to the City for the covenants it would assume."

The trial court's view (as stated in an opinion filed with the decree) was that "a contract might be drawn containing substantial covenants to be assumed and performed by each employee working thereunder, so that it becomes a contract made directly between the City and the individual employees choosing to work under it, though it be negotiated by the union officials as their agents." Thus what the trial court thought proper was not collective bargaining, with a contract between the employees' union and their employer as in private industry, but collective negotiations for individual contracts only to be made separately between each employee and the City. [As to the nature of collective bargaining contracts see J.

1246

I. Case Co. v. National Labor Relations Board, 321 U. S. 332, 64 S. Ct. 576, 88 L. Ed. 763; See also 31 Am. Jur. 872, Sec. 97.]

██ Defendants say: "there is but one fundamental and essential question involved in this case, which is whether Section 29, Article I, of the Constitution 'that employees shall have the right to organize and to bargain collectively through representatives of their own choosing,' is applicable to a municipality, and, if so, to what extent and under what limitations." The City contends that Section 29 applies only to employees of private employers. Defendants' ██ position is that this provision does apply to employees of the City engaged in its corporate or proprietary capacity. They argue "that the same fundamental considerations that caused the constitutional convention to secure the right of collective bargaining to 'employees' of private employers, apply with equal force to city employees, at least those employed by the City in its corporate capacity." For the reasons hereinafter stated, we must rule that Section 29 does not apply to any public officers or employees. We must further hold that the statutes (Article 3, Chapter 38) providing the organization and powers of cities of the second class prevent the City from making any of the proposed contracts.

██ This ruling does not mean, as defendants' counsel seem to fear, that public employees have no right to organize. All citizens have the right, preserved by the first amendment to the United States Constitution and Sections 8 and 9 of Article I of the 1945 Missouri Constitution (Sections 14 and 29, Constitution of 1875), to peaceably assemble and organize for any proper purpose, to speak freely and to present their views and desires to any public officer or legislative body. Employees had these rights before Section 29, Article I, 1945 Constitution was adopted. [See Allen Bradley Local No. 1111, United Electrical, Radio & Machine Workers of America v. Wisconsin Employment Relations Board, 237 Wis. 164, 295 N. W. 791, affirmed 315 U. S. 740, 62 S. Ct. 820, 86 L. Ed. 1154; Amalgamated Utility Workers v. Consolidated Edison Co., 309 U. S. 261, 60 S. Ct. 561, 84 L. Ed. 732.] Organization by citizens is a method of the democratic way of life and most helpful to the proper functioning of our representative form of government. It should be safeguarded and encouraged as a means for citizens to discuss their problems together and to bring them to the attention of public officers and legislative bodies. Organizations are likewise helpful to bring public officers and employees together to survey their work and suggest improvements in the public service as well as in their own working conditions. Our General Assembly has even provided by statute for an organization of all trial and appellate judges of this state to consider and discuss the work of the courts and make recommendations for legislation. [See Judicial Conference Act of 1943, Laws 1943, p. 514; Mo. Stat. Ann. 2039.1-2039.8.]

Organizations of other state, county and municipal officers are well known and have long been recognized as serving a useful purpose. Nevertheless, the organization and activity in organizations of public officers and employees is subject to some regulation for the public welfare. [See United Public Workers v. Mitchell, 330 U. S. 75, 67 S. Ct. 556, 91 L. Ed. 509; Oklahoma v. United States Civil Service Commission, 330 U. S. 127, 67 S. Ct. 544, 91 L. Ed. 537; King v. Priest, No. 39954, 206 S. W. (2d) 547, decided concurrently herewith and cases therein cited.] This is because a public officer or employee, as a condition of the terms of his public service, voluntarily gives up such part of his rights as may be essential to the public welfare or be required for the discipline of a military or police organization.

■ Therefore, we start with the proposition that there is nothing improper in the organization of municipal employees into labor unions; and that no new constitutional provisions were necessary to authorize them. However, collective bargaining by public employees is an entirely different matter. This was pointed out by such a friend of union labor as our late President, Franklin D. Roosevelt, in a letter to the head of a union of federal employees, which was read in the debates on Section 29 in our Constitutional Convention. This letter states: "All Government employees should realize that the process of collective bargaining, as usually understood, cannot be transplanted into the public service. It has its distinct and insurmountable limitations when applied to public personnel management. The very nature and purposes of Government make it impossible for administrative officials to represent fully or to bind the employer in mutual discussions with Government employe organizations. The employer is the whole people, who speak by means of laws enacted by their representatives in Congress. Accordingly, administrative officials and employes alike are governed and ■ guided, and in many instances restricted, by laws which establish policies, procedures, or rules in personnel matters."

Indeed defendants' counsel recognize (as did the sponsors of Section 29 in the Constitutional Convention) that wages and hours must be fixed by statute or ordinance and cannot be the subject of bargaining. In the argument in this case, en banc, it was conceded that a city council cannot be bound by any such bargaining; that it must provide the terms of working conditions, tenure and compensation by ordinance; and that it likewise by ordinance may change any of them the next day after they have been established.

Honorable R. T. Wood, President of the State Federation of Labor, who proposed Section 29 in the Convention, said: "I don't believe there is anyone in the organization that would insist upon having a collective bargaining agreement with a municipality setting forth wages, hours, and working conditions. That would be absolutely im-

possible insofar as wages and hours are concerned because the Common Council and the Mayor are the last word and you cannot pay a salary or wage to a municipal employee unless it is provided by law." It is true that Mr. Wood also contended that collective bargaining was applicable to other matters such as "classifications, working conditions of all kinds, night work, day work, and a multiplicity of items aside from wages and hours that the representatives of the organized groups meet and deal with the city officials of the head of any department under which the employees might be working." He further stated: "Now, collective bargaining means a good many things. There is many types of collective bargaining. When you sit down at a table, representative of the employees of the city sits down at a table and discusses the matter concerning employees relations between an employee and the city, that is collective bargaining."

This is confusing collective bargaining with the rights of petition, peaceable assembly and free speech. Certainly public employees have these rights for which Mr. Wood was contending; and can properly exercise them individually, collectively or through chosen representatives, subject, of course, to reasonable legislative regulation as to time, place and manner in the interest of efficient public service for the general welfare of all the people. However, persons are not engaging in collective bargaining when they tell their senator, representative or councilman what laws they believe they should make. Neither are they engaging in collective bargaining with executive or administrative officers when they urge them to exercise discretionary authority within standards and limits which they have received or must receive from the legislative branch, or ask them to make recommendations to the legislative branch for further legislation.

Undoubtedly Section 29 had a different purpose. It was intended to safeguard collective bargaining as that term was usually understood in employer and employee relations in private industry. It is in the exact language of the National Industrial Recovery Act of 1933 (48 Stat. 195, 198, Chap. 90, Sec. 7(a)(1)) the stated purpose of which was "promoting the organization of industry . . . to induce and maintain united action of labor and management." It is substantially the same as Section 7 of the National Labor Relations Act (29 U. S. C. A. Sec. 157) which was adopted for the purpose of compelling collective bargaining in private industry and which specifically excluded public employees. [29 U. S. C. A. Sec. 152.] Thus the principal purpose of Section 29 was to declare that such rights of collective bargaining were established in this state. It means that employees have the right to organize and function for a special purpose: namely, for the purpose of collective bargaining. Surely the real purpose of such bargaining is to reach agreements and to result in binding contracts between unions representing employees and their employer. But legislative discretion

cannot be lawfully bargained away and no citizen or group of citizens have any right to a contract for any legislation or to prevent legislation. The only field in which employees have ever had established collective bargaining rights, to fix the terms of their compensation, hours and working conditions, by such collective contracts, was in private industry.

As stated by the United States Supreme Court in the J. I. Case Co. case (64 S. Ct., 1. c. 579,) collective bargaining is not for the purpose of making individual contracts of employment. On the contrary: ''The negotiations between union and management result in what often has been called a trade agreement, rather than in a contract of employment. Without pushing the analogy too far, the agreement may be likened to the tariffs established by a carrier, to standard provisions prescribed by supervising authorities for insurance policies, or to utility schedules of rates and rules for service, which do not of themselves establish any relationships but which do govern the terms of the shipper or insurer or customer relationship whenever and with whomever it may be established. . . . . The individual hiring contract is subsidiary to the terms of the trade agreement and may not waive any of its benefits, any more than a shipper can contract away the benefit of filed tariffs, the insurer the benefit of standard provisions, or the utility customer the benefit of legally established rates.'' As applied to public office or employment, this would mean government by private agreement and not by laws made by the representatives of the people.

Both parties hereto rely strongly on statements made in the debates in the convention. As hereinabove shown, these confused collective bargaining with rights guaranteed by other unchanged provisions of the Constitution and assumed that the right of employees to organize at all for any purpose might depend on this section. Defendants rely upon the defeat of an amendment providing ''that this section shall not apply to the state, or any sub-division or municipality thereof.'' Much of the debate upon this amendment disclosed the fear that it would prevent public employees from being members of labor organizations to which many already belonged. It seems reasonable that it was defeated because it was considered too drastic in this respect rather than for the purpose of extending *actual* collective bargaining to public employment. Likewise, Mr. Wood's original proposal was opposed because it stated, as Section 1, that ''there shall be *no abridgment* of the right of employees to organize and bargain collectively through representatives of their own choosing.'' It was argued that the words ''no abridgment'' were drastic enough to limit the police power of the state. Moreover, originally there was also a proposed Section 2, stating there should be no abridgment of the right of an officer or employee of the state or any political sub-division to belong to a labor organization, which like-

wise was not adopted. Thus the Convention did not settle the matter of public employees in labor organizations and their functions in governmental relations but left the matter to the legislature and the courts. While these debates are instructive as to the background and development of this proposal, nevertheless what was submitted to the people for adoption was Section 29 and not any delegate's speech about it. [See Adamson v. California, 67 S. Ct. 1672, 91 L. Ed. 1464, and concurring opinion of Justice Frankfurter, 67 S. Ct., l. c. 1682; see also Household Finance Corp. v. Shaffner, 356 Mo. 808, 203 S. W. (2d) 734, l. c. 737.] Furthermore, the people voted on the adoption of an entire Constitution so that Section 29 must be construed in connection with all the provisions of the Constitution of which it is a part, many of which have long been essential parts of our basic law.

So considered it seems unreasonable to construe Section 29 as altering fundamental principles of government so clearly and positively set forth in our Constitution by applying it to bargaining for public office or employment. The principle of separation of powers is stated in Article II (Art. III, 1875 Const.) which provides that "the powers of government shall be divided into three district departments . . . each of which shall be confided to a separate magistracy"; and that "no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others." This establishes a government of laws instead of a government of men; a government in which laws authorized to be made by the legislative branch are equally binding upon all citizens including public officers and employees. The legislative power of the state is vested in the General Assembly by Section 1 of Article III. (Sec. 1, Art. IV, 1875 Const.) The members of the legislative branch represent all the people, and speak with the voice of all of the people, including those who are public officers and employees. In the exercise of their legislative powers, they must speak through laws which must be equally binding upon all and not through contracts. Even the making of public contracts must be authorized by law. (See Sec. 39(4), Article III, 1945 Const., Sec. 48, Art. IV, 1875 Const.) Laws must be made by deliberation of the lawmakers and not by bargaining with anyone outside the lawmaking body. These same governmental principles and constitutional provisions apply also to municipalities because their legislative bodies exercise part of the legislative power of the state. [See City of Springfield v. Smith, 322 Mo. 1129, 19 S. W. (2d) 1; Ex parte Lerner, 281 Mo. 18, 218 S. W. 331 and cases cited; see also Sections 6613-6617 as to legislative powers of the city council of second class cities.] The City's organization and powers come from the General Assembly which is authorized by Section 15, Article VI (Sec. 7, Art. IX, 1875

Const.) to provide for the organization and classification of cities and towns with the limitation that "the number of such classes shall not exceed four; the powers of each class shall be defined by general laws so that all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions." It is inconceivable that the Constitutional Convention intended to invalidate all of the statutes, enacted through the years under this authority, concerning the operation of municipalities in fixing and regulating compensation, tenure, working conditions and other matters concerning public officers and employees.

Under our form of government, public office or employment never has been and cannot become a matter of bargaining and contract. [State ex rel. Rothrum v. Darby, 345 Mo. 1002, 137 S. W. (2d) 532; see also Nutter v. City of Santa Monica (Cal.), 168 Pac. (2d) 741, l. c. 745; Miami Water Works Local v. City of Miami (Fla.), 26 So. (2d) 194, l. c. 197; Mugford v. Mayor and City Council of Baltimore (Md.), 44 Atl. (2d) 745, l. c. 747.] This is true because the whole matter of qualifications, tenure, compensation and working conditions for any public service, involves the exercise of legislative powers. Except to the extent that all the people have themselves settled any of these matters by writing them into the Constitution, they must be determined by their chosen representatives who constitute the legislative body. It is a familiar principle of constitutional law that the legislature cannot delegate its legislative powers and any attempted delegation thereof is void. [11 Am. Jur. 921, Sec. 214; 16 C. J. S. 337, Sec. 133; A. L. A. Schechter Poultry Corp. v. U. S., 295 U. S. 495, 55 S. Ct. 837, 79 L. Ed. 1570.] If such powers cannot be delegated, they surely cannot be bargained or contracted away; and certainly not by any administrative or executive officers who cannot have any legislative powers. Although executive and administrative officers may be vested with a certain amount of discretion and may be authorized to act or make regulations in accordance with certain fixed standards, nevertheless the matter of making such standards involves the exercise of legislative powers. Thus qualifications, tenure, compensation and working conditions of public officers and employees are wholly matters of law-making and cannot be the subject of bargaining or contract. Such bargaining could only be usurpation of legislative powers by executive officers; and, of course, no legislature could bind itself or its successor to make or continue any legislative act. Therefore, this section can only be construed to apply to employees in private industry where actual bargaining may be used from which valid contracts concerning terms and conditions of work may be made. It cannot apply to public employment where it could amount to no more than giving expression to desires for the lawmaker's consideration and guidance. For these fundamental reasons, our conclusion is that Section

1252

29 cannot reasonably be construed as conferring any collective bargaining rights upon public officers or employees in their relations with state or municipal government.

 Nor can there be any difference with regard to employees of the City in connection with its corporate or proprietary capacity. Defendants' contention that there should be is inconsistent with their contention that the word "employees" as used in Section 29 is all inclusive, covers all who could be classified as employees whether public or private, and cannot be limited to any class of employees. If this term is all inclusive so as to include any public employees, why would it not cover all such employees whether state, county or municipal, governmental or corporate? Moreover, some of the city employees involved herein are governmental. The proposed contracts covered all those in street work and some in sewage disposal plants. In protecting health and sanitation, even in keeping its streets clean and sanitary, a city is exercising governmental functions. [Lober v. Kansas City, (Mo.), 74 S. W. (2d) 815 and cases cited.] The distinction between proprietary and governmental functions is one created by the courts mainly for the purpose of imposing some tort liability upon municipalities. [See 38 Am. Jur. 265, Sec. 573.] Nevertheless, "a municipal corporation cannot be a private corporation in any true sense of the word, but remains, even in its dual capacity, essentially a public corporation." [37 Am. Jur. 728, Sec. 114.] The question involved herein is a question of power rather than one of what function is involved. "Missouri cities have and can exercise only such powers as are conferred by express or implied provisions of law; their charters being a grant and not a limitation of power, subject to strict construction, with doubtful powers resolved against the city." [Taylor v. Dimmitt, 336 Mo. 330, 78 S. W. (2d) 841.] Fixing compensation, hours and tenure require the exercise of legislative powers in exactly the same way for all employees of the City, whether governmental or corporate, at least under the organization of second class cities in this state. We do not say that the General Assembly could not separate corporate functions, and employees engaged therein, and provide for their operation and management in some manner distinctly apart from other city functions (perhaps like the Tennessee Valley Authority under the federal government) so that employer and employee relations could be handled on a basis similar to private industry. However, it is clear that this has not been done in our cities of the second class.

On the contrary, the General Assembly has provided a single civil service system for city officers and employees. (Sections 6678-6688) Under this system, the Civil Service Commission of the city must provide for the classification of all employments, for open, competitive, free examinations as to fitness, for an eligible list from which vacancies shall be filled, for a period of probation before employment

is made permanent and for promotion on the basis of merit, experience and record. (Section 6679) The Commission must be notified of vacancies and these must be filled from a certified list of highest candidates on the eligible list. (Section 6683) The eligible list is prepared from examinations with rank on the list determined from the results thereof. (Section 6684) The Commission must also classify laborers who are likewise placed on the eligible list in accordance with ratings received in examinations and tests, and positions in any labor class must be filled by appointment from the Commission's lists. (Section 6685) The Commission is required to keep records for making promotions on the basis of merit and may provide for filling vacancies by promotion, and also make rules for transfer and reinstatement. (Section 6686) All persons under civil service are subject to removal by the department commissioner. (Section 6688) Thus the General Assembly has provided a single complete all inclusive scheme for selection, tenure, transfer, promotion and removal, which applies to all city officers and employees under civil service whether engaged in the governmental or corporate activities of the city. Likewise, all officers and employees are required to be paid a fixed salary or wage (Section 6672); and this "may be increased or decreased at any time" by the Council. (Section 6659) The term "employees" in a general statute, concerning relations of employers and employees, was held inapplicable to civil service appointees of a city in Hagerman v. City of Dayton (Ohio), 71 N. E. (2d) 246, in which it was also held that outside organizations could not interfere in the operation of the civil service provisions, similar to those herein involved. It seems obvious that, under the civil service laws applicable to the City, it must deal with all of its employees, regardless of kind or classification, on exactly the same basis and that is by the exercise of its legislative powers in accordance with the conditions fixed by the General Assembly. This clearly leaves the City no authority to deal with any employees involved herein on a collective bargaining contract basis.

The judgment is reversed and the cause remanded with directions to enter a decree in accordance with the views herein expressed. All concur.