**CLEVELAND (City), etc., v. DIVISION 268, et al.**

Common Pleas Court, Cuyahoga County.

No. 609819.   Decided December 26, 1949.

Robert J. Shoup, General Counsel, Robert F. Mooney, Asst. General Counsel, Cleveland, for plaintiff, City of Cleveland. Bernard Friedman, Cleveland, for defendants.

## OPINION

By ARTL, J.

The plaintiff in this action, is the city of Cleveland, a municipal corporation, by the individuals constituting the Transit Board of the city of Cleveland.

The plaintiff is a division of the municipality of the city of Cleveland.   The Transit System is a publicly owned institu-

tion, owned by the people of the city of Cleveland.

It is to be noted that as a matter of law there is a legal limitation upon the power of the Transit Board in this instance, or of any public Board, to deal with, that is, to contract with a labor organization. The employees in the Transit System must recognize that they do not have the same right to contract with a public Board that they do with a private employer. There is abundant authority for that proposition.

City of Cleveland v. Division 268 of the Amalgamated Assn. etc., 30 O. O. 395 (1945), an action involving these same defendants; Hagerman v. Dayton, 147 Oh St 313, 34 O. O. 238 (1947); Nutter v. City of Santa Monica, 74 Cal. App. (2d) 292, 168 Pac. (2d) 741 (1946); Miami Water Works Local No. 654 v. City of Miami, 157 Fla. 445, 26 So. (2d) 194, 165 A. L. R. 967 (1946); City of Springfield v. Clouse, 356 Mo. 1239, 206 S. W. (2d) 539 (1947); Mugford v. Baltimore, 185 Md. 266, 44 Atl. (2d) 745 (1945).

But in the practical recognition of the rights of the employees of the city of Cleveland, and in this instance of the rights of the employees of the Transit System, there has been set up machinery to take care of, to adjust, and arrive at working conditions; machinery that was set up for the express purpose of making the conditions of employees reasonable, both from the standpoint of the city of Cleveland and the employees.

In this instance an impartial umpire system has been established to determine any and all grievances and working conditions where a dispute arises between the city and the transit employees. This machinery, as the court views it, is entirely voluntary. There is no legal obligation on the part of the employer, in this instance the city, to do so,— to set up this kind of machinery. There is nothing in the law that says that employees may force an employer—public employer—a city government—to enter into any labor contract.

City of Cleveland v. Division 268 of the Amalgamated Assn. etc., 30 O. O. 395 (1945); Hagerman v. Dayton, 147 Oh St, 313, 34 O. O. 238 (1947); Nutter v. City of Santa Monica, 74 Cal. App. (2d) 292, 168 Pac. (2d) 741 (1946).

That is a part of the background that we have before us and the machinery that has been established to dispose of grievances was entirely voluntary.

Now the defendants in this case, first of all, are members of Division 268 of the Amalgamated Association of Street and Electric Railway and Motor Coach Employees of America.

In addition thereto, we have as defendants Thomas P. Meaney, individually and as president of the Local, and Mr. Harry C. Lang, individually and as financial secretary and treasurer of the Local. In addition thereto we have other officers of the Local, and I understand from statements made to the court that Mr. Meaney and Mr. Lang are not employees of the city of Cleveland, but all the other officers are.

I might point out at this time that from the statement of Mr. Friedman, acquiesced in by counsel for the City Transit, defendant William Clifford is no longer employed by the city, I understand. Is that correct? And that as to him, the action will be dismissed.

Now this is a class suit. It is an action brought by the city of Cleveland against all of the members of Local 268 and these members are all employed by the city of Cleveland with the exception of Mr. Meaney and Mr. Lang.

Now, so that the court's position is clearly understood, in a class suit, such as this is, all members of Division 268 are before the court, through the representatives named as such defendants, as though they were all expressly made parties to this lawsuit.

Sec. 11257 GC; Kiser v. Operator's Union, 4 Abs 55, 159 N. E. 494; Kealey v. Faulkner, 7 N. P. (N. S.) 49; H. H. Meyer Packing Co. v. Butcher's Union, 18 N. P. (N. S.) 457; 24 O. Jur. Labor, Section 64, at page 680.

Now this machinery I spoke of a moment ago, this impartial machinery that was set up for the determination and the settlement of grievances was through the medium of an impartial umpire. But the important thing about the impartial umpire machinery that has been established is that if it is to be effective, the decision of the umpire in any case must be accepted by both sides. There must be mutuality in this respect, or the system, the machinery set up for the settlement of these grievances will break down.

I have indicated a moment ago that the acquiescence therein by the public employer is of necessity a voluntary act. It is singular, also, in this case, the machinery that established this impartial umpire system under which you have operated in this case is not something that was forced upon the employees. I understand that the machinery was devised by agreement between both the members of Local 268 and the city, and if my memory serves me correctly, I believe counsel on one side or the other stated that the umpire chosen in this case was chosen at the instance and suggestion of Local 268.

Now it is not the function of the court in this litigation to pass upon the wisdom, the fairness, the justice or the injustice of the umpire's decision which apparently precipitated this controversy here. Any dissatisfaction with that decision or any need for any clarification of its provisions is a matter that must be taken back to the umpire, in the event of a misunderstanding and dissatisfaction.

But we come to the question of whether or not, in the event of dissatisfaction with the umpire's decision, the employees of the city, members of this Local 268—would they have the right to strike?

I stated a little bit earlier, and I want to be sure that this is definitely understood, that this is not the situation where an employer and his employees may enter into a contract to care for and to take care of labor relations. This is a situation where the public employer is not free to do so, under the authorities that have been cited to this court, and many others that abound.

The question is whether or not public employees do have the right to strike. Under the common law,—and there is no question about it so far as this court is concerned,—there is no right to strike on behalf of public employees, for many reasons, some of which at least, might be paraphrased in the language of several of the decisions, that it is a means of coercing the delegation of the discretion which a public Board or public Body must exercise in its fulfillment of its duties.

Hagerman v. Dayton, 147 Oh St, 313, 34 O. O. 238, (1947); City of Los Angeles v. Los Angeles Bldg. and Trades Council, 210 Pac. (2d) 305 at pages 311-312; Mugford v. Baltimore, 185 Md. 266, 44 Atl. (2d) 745, at page 747, 162 A. L. R. 1101, at page 1104.

It has been repeatedly stated that it is against public policy for public employees to strike. Many courts have held that a strike by public employees is against public policy, is unlawful, illegal and may be restrained and enjoined. Houston v. Duncan, order of the District Court of Harris County, Texas, Labor Unions and Municipal Employee Law, page 158; City of Tulsa v. Shryock and City of Tulsa v. Vinall, 11 Municipal Law Journal 92; City of Pittsburgh v. Mueller and Duquesne Light Co. No. 2978, 11 Municipal Law Journal 94-95, wherein the city of Pittsburgh obtained a restraining order on the union officers and employees of a private power company to prevent a work stoppage; United States v. United Mine Workers of America, 330 U. S. 258, 91 L. Ed. 595 (1947); Los Angeles v. Los Angeles Bldg. and Trades Council, 210 Pac.

(2d) 305; Society of New York Hospital v. Hanson, 59 N. Y. S. (2d) 91 (1945) and Beth-El Hospital v. Robbins, 60 N. Y. S. (2d) 798 (1946), a restraining order being granted in the Hanson case and a permanent injunction being granted in the Robbins case under the theory that employees working for a hospital, public or private, have no right to strike; 43 C. J. S. Section 147, page 744; and by obiter in the following cases; Mugford v. Baltimore, 185 Md. 266, 44 Atl. (2d) 745; Wilson v. New, 61 U. S. L. Ed. 755; Miami Water Works Local No. 654 v. City of Miami, 157 Fla. 445, 26 So. (2d) 194, 165 A. L. R. 967 (1946); Congress of Industrial Organizations v. City of Dallas, Texas, 198 S. W. (2d) 143; Perez v. Board of Police Commissioners, 78 Cal. App. (2d) 638; Petrucci v. Hogan, 27 N. Y. S. (2d) 718; City of Springfield v. Clouse, 356 Mo. 1239, 206 S. W. (2d) 539; **Hagerman v. City of Dayton, 147 Oh St, 313, 34 O. O. 238.** See also Rhyne, Labor Unions and Municipal Employee Law (1946).

Now in the state of Ohio the Legislature adopted a section of the Code, dealing with the subject. It is under the caption, "Strike of public employees," and it covers §17-7 to 17-12 GC. **Sec. 17-8 GC** reads as follows:

"No person holding a position by appointment or employment in the government of the State of Ohio or in the government of the several cities, villages, counties or townships thereof, or any other political subdivision of the state, or of a municipality, or in the public school service, or in any public or special district or in the service of any authority, commission or Board or in any other branch of the public service hereinafter called a public employee, shall strike."

The other sections of the Code included within the Act that I just referred to, provide for penalties.

Now counsel for the defendants has urged the court that that section has application only to the municipality dealing with or engaged in its governmental function. And that since the operation of the Transit System is a proprietary function, that this section of the Code would have no application.

I am sorry to say that this court cannot agree with you, Mr. Friedman, in that contention. The section of the Code that I have read to you is very specific; it makes no distinction between a government in its governmental function, and a government in its proprietary function. This same conten-

tion was urged upon the court in the City of Los Angeles v. Los Angeles Bldg. and Trades Council, supra, and denied by the court.

This section of the General Code that I just read is merely expressive of the common law. The Legislature of Ohio, like the United States Congress and legislatures of many other states (Ohio, New York, Michigan, New Jersey, Virginia, Minnesota, Pennsylvania, Missouri, Indiana, Texas, Nebraska and Washington), has enacted legislation spelling out the common law as it is and has been known. And why? I think it is clear that in our system of government, the government is a servant of all of the people. And a strike against the public, a strike of public employees, has been denominated in the decisions cited above, as a rebellion against government. The right to strike, if accorded to public employees, I say, is one means of destroying government. And if they destroy government, we have anarchy, we have chaos.

I think that is definitely why the Legislature has spelled out the question of whether or not public employees shall have the right to strike.

The Legislature, in no unmistakable terms, has set forth what has been true under the common law.

Now it is urged in this instance that Mr. Meaney and Mr. Lang are not employees of the city of Cleveland, and that the Ferguson Act, so-called, has no application to them as officers of the Local.

This court is satisfied that their influence with the members and their leadership in the controversy that exists at this time is of such a character that we cannot shut our eyes to their functions as representatives of this Local. Both of these gentlemen, over the years, have accorded to this Local leadership of a very fine character. They have represented this Local in its dealings and negotiations with the city of Cleveland; they are officials of the Union, and they are amenable, like other members of this Local, to whatever orders and directions emanate from this court.

I must point out also, the power of the court to enjoin an unlawful act does not stem alone from the so-called Ferguson Act. There is an inherent right in the Court of Equity at all times to enjoin any wrong-doing where there is no adequate remedy at law.

19 Am. Jur., Equity, Section 451; 16 O. Jur. Equity, Sec. 45, pg. 111.

And if, as a consequence of the relationship of these gentlemen to the members of the Local who are public employees— if their influence, their orders and directions are in any way of a character that would be construed as aiding and abetting

in the doing of something that is contrary to law, this court would be empowered to enjoin them. **24 O. Jur., Labor, Section 64.**

It strikes the court that the duty of these public employees is clear. Their striking, as they are at this time, is unlawful, and as a consequence this court is required under the decisions to enjoin this unlawful act.

Now under the circumstances, the prayer of the plaintiff's petition will be granted, as to Item 1, Item 2, Item 3, Item 4, Item 5 and Item 6.

Coming now to Item 7. This court has been advised by counsel for defendants, Thomas Meaney and Harry Lang, stated in open court, that neither Mr. Meaney nor Mr. Lang had ordered any strike or directed any strike. There has been no evidence offered that they have. I say there has been no evidence that this court may consider, that they have ordered the strike, or that they have in any way directed a strike.

By that I mean directing members to go on strike. And therefore the first part of paragraph No. 7 of necessity may not form the basis of the restraining order. But so much thereof as reads as follows:

"That this Court issue a mandatory order upon defendants Thomas P. Meaney and Harry C. Lang, and the aforesaid officers and members of the Board of Local 268, to issue an order upon the members of Local 268 to cease striking, to cease abstaining from their public employment in whole or in part and to return to their respective duties as public employees of the Cleveland Transit System in order to resume operation of its vehicles and to resume normal operation of the Transit System of the City of Cleveland."

That part of the restraining order prayed for will remain.

Now it is the court's opinion that the members of Local 268, including the officers and the executive Board, by their conduct in the past, have demonstrated that they are people worthy of trust and confidence. This court is of the opinion that the membership of this Local 268, when it has spelled out for them its duty, as the court has done in this instance, will abide by the decision of this court.

This court is of the opinion that if the right had been demonstrated to them or clarified to them in the past, I doubt very seriously if we would have had a strike on our hands today.

And therefore let these members demonstrate that they

do believe in the principles of government; that they do believe in respecting court orders. The court will make this order effective as of December 27, 1949 to give these members the opportunity to determine whether or not they will return to work.