**CITY OF GRANDVIEW, Missouri, Respondent,**

v.

**Larry L. MOORE et al., Appellants.**

**No. 25648.**

Missouri Court of Appeals, Kansas City District.

April 3, 1972.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 11, 1972.

Application to Transfer Denied July 17, 1972.

Charles C. Shafer, Jr., Kansas City, for appellants.

James C. Morris, Kansas City (Shirkey, Morris & Cox, Kansas City, of counsel), for respondent.

PER CURIAM:

The City of Grandview was successful in obtaining its requested permanent injunction against appellants, who are members and representatives of International Association of Fire Fighters, AFL–CIO–CLC and its local affiliate known as Grandview Fire Fighters Local No. 1786, Grandview, Missouri, from striking or engaging in a work stoppage. The issues presented by appellants are: Whether the petition states a claim to relief; whether the evidence justified a permanent injunction; whether there was proof of concerted action on appellants' part; whether the injunction prohibits trivial or technical matters contrary to law; whether the trial court sufficiently described the acts enjoined; whether the appellants were convicted of nonpleaded acts (a 56 day prior work stoppage in 1968); whether appellants were deprived of their constitutional rights by the trial court's decree; and whether a work stoppage is a strike.

On May 22, 1970, appellants notified the city council by letter that the Grandview Fire Fighters Local could not and would not accept the City's Administrator's proposed salary schedule, and that its members were to receive a salary increase in an amount which would bring pay up to the average of·other departments in the greater Kansas City area. The letter went on: "If our demands are not met by Thursday morning, May 28, 7:00 a. m. Local 1786 will begin a work stoppage, answering emergency calls only. Any action taken against one or more members will be considered as action against the entire Union body." Upon receipt of the letter the City enacted Ordinance No. 1631, dated May 27, 1970, directing its City Attorney to obtain an injunction and restraining order against Local 1786, preventing the fire fighters from "slowing down, interfering with, or affecting in any manner the orderly and prompt continuance of the day-to-day work of the City of Grandview's Fire Department in the prevention and fighting of fires or any way neglecting their duties as public employees while on their shift or in any manner refusing to carry out the instructions or directions of the Fire Chief."

On May 28, 1970, the City filed its petition for an injunction alleging in essence the facts of appellants' work stoppage to force and coerce the City into granting them a salary increase. It is then alleged that by virtue of appellants' plan, conspiracy and acts complained of in the petition, the City's fire department and equipment and property were left uncared for or not maintained, thereby subjecting it to depreciation in value and use, all of which wrongfully and unlawfully threatened and endangered the health, safety, welfare and lives and property of the inhabitants of the City; that the acts, conspiracy and plan constituted insubordination and disobedience to the instructions and orders of appellants' superior officers of the fire department, in disregard to its regulations, the City's ordinances, and the laws of Missouri, on account of which the function of fire fighting and fire prevention in the City was disrupted. A temporary restraining order, upon the City's bond being filed, was issued, and hearing on the petition began on June 5, 1970.

The City had a population of about 23,000 persons in 1970, is a fourth class city, and had in 1969 an assessed valuation in excess of $29,000,000. When the petition was filed it had two fire stations, ten full time fire fighters, two fire captains

and a fire chief. Its fire fighting equipment had a 1969 valuation of more than $130,000. All of the fire department personnel were members of Local 1786 except the fire chief.

In addition to fighting fires, appellants' duties as per job descriptions, work schedules and oral work rules, included maintenance of radio and telephone logs, inspecting answering complaints, keeping bunks made up, washing all equipment and cleaning and drying hoses after runs, making out fire reports, raising and lowering flags, keeping records of preventive maintenance, training, answering telephone and daily radio network checks, cleaning the apparatus room, filling out daily work schedule forms and fire run reports, issuing burn permits, accounting for gasoline, answering the emergency and business phones, and the direct line phone of the American District Telegraph (a company which had installed fire detection devices in four large businesses within the city for the purpose of early warning to the fire department).

On May 26, 1970, the City's Administrator had a meeting with appellant Moore and other members of the local and bargaining committee of the union. Moore then restated the demands, and that a work stoppage would begin Thursday morning, May 28, during which only the emergency phone and fire calls would be answered, but "that at this time they would not allow the trash to accumulate." The City Administrator testified that the latter remark had reference to a work stoppage occurring in October, 1968, in the fire department. The threatened work stoppage did begin at 7:00 a. m. on May 28, and continued until service of the restraining order that afternoon. During the stoppage, appellants refused to perform any of their regular duties except the answering of emergency calls. Specifically, they did not: answer the A.D.T. phone; carry out the radio check, clean the apparatus room; keep records; fill out truck inspection forms; or keep gasoline records. At about 7:20 a. m. on May 28th, there was a fire run, but no report was taken at that time.

Moore told the City's Administrator that they would go on a work stoppage just like they had in October, 1968, but that this time they would not allow the quarters to become cluttered, and he was reassured that they would take care of the emergency calls. The motion to strike evidence of the 1968 work stoppage (which was for 56 days) was overruled by the court upon the ground of relevancy in that the threatened work stoppage here was identical to that on the prior occasion, except for the removal of trash accumulation. The 1968 work stoppage caused a morale problem within the department, not only with the fire fighters but also with the chief. The problem became so acute during one period that the chief was moved to other buildings in the city to do his paper work and other duties.

■ The petition states a claim for relief and the trial court did not err in overruling the motion to dismiss it. It is pleaded that appellants voted at a secret meeting to submit salary demands and to call a part-time work stoppage if the City, a municipal corporation operating a fire department, did not meet their demands. These facts were communicated to the City along with the threat of work stoppage. A "work stoppage" is synonymous with the word "strike", 40 Words and Phrases 333. See also Baker v. Powhatan Mining Co., 146 Ohio St. 600, 67 N.E.2d 714, 717[4]; and City of Rockford v. Local 413 Int. Assn. of Firefighters, 98 Ill.App.2d 36, 240 N.E.2d 705, 707[2]. The petition pleaded a state of facts, which if true, would be violative not only of the common law (51A C.J.S. Labor Relations § 306, p. 104) that public employees do not have the right to strike, but also Sec. 105.530, RSMo 1969, V.A.M.S., which statutorily announces the public policy of this state. The Legislature has not seen fit to expand the rights of public employees as contained in the common law and Secs. 105.500 et seq. See the discussion and criticisms of these sections in 36 Mo.Law Rev. 167, "The Development and Current Application of Missouri Public Sector Labor Law."

The evidence is that appellants did carry out the threat and did start a work stoppage at 7:00 a. m. on May 28, 1970, although it was of short duration—until the restraining order was served upon them. The threatened work stoppage did not amount to trivial, small or technical things (such as sweeping and mopping office; empty ash trays, waste baskets and clean; dusting; keeping work bench neat; and keeping feet off the desk) as appellants contend. Rather, the curtailment of work, except as to answering emergency calls and removal of trash accumulations, had the potential for seriously interfering with the city's duty and function of providing complete fire protection to its 23,000 inhabitants and their properties worth in excess of $29,000,000, as well as cooperation with adjoining communities in mutual fire protection. The duties of appellants included maintaining fire equipment, trucks, pumpers and hoses, testing and monitoring the A.D.T. system which protected four large business firms within the city. These functions, having directly to do with fire fighting and protection, were clearly not trivial, and if not performed, could cause the city and its inhabitants irreparable damage. 43 C.J.S. Injunctions § 23, p. 446, et seq. There was sufficient evidence that there were actual and threatened wrongs, State ex rel. George v. Mitchell, Mo.App., 230 S.W.2d 116, 122, and that there was threatened concerted actions of appellants.

■ But aside from the matter of claimed trivial acts which were threatened and enjoined, the law is well settled that appellants, as public employees, may not conduct a strike, or threaten a work stoppage which under the facts here, amounts to a strike. Sec. 105.530, supra; and see State ex rel. Missey v. City of Cabool, Mo., 441 S.W.2d 35, 41[2–5]. In the case of United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884, the Union proceeded unilaterally to declare a contract to be at an end, and pursuant to its policy of "no contract, no work" conducted a walkout amounting to a strike. The government had seized the coal mines for the purpose of producing coal for the war effort. It was held that the relation between the government and the defendants was that of employer-employees, and that, therefore, the Norris-LaGuardia Act prohibiting federal court injunctions in labor disputes did not apply. In Board of Ed. of Community Unit School Dist. No. 2 v. Redding, 32 Ill.2d 567, 207 N.E.2d 427, 430[1], it is stated that the universal view is that "there is no inherent right in municipal employees to strike against their governmental employer, whether Federal, State, or a political subdivision thereof, and that a strike of municipal employees for any purpose is illegal." (citing many cases and much authority) and "The underlying basis for the policy against strikes by public employees is the sound and demanding notion that governmental functions may not be impeded or obstructed, as well as the concept that the profit motive, inherent in the principle of free enterprise, is absent in the governmental function." See also City of Rockford v. Local No. 413, etc., supra, loc. cit. 98 Ill.App.2d 36, 240 N.E.2d 705, 706[1].

■ Appellants say that the petition did not plead the 1968 work stoppage and therefore the trial court convicted them of unpleaded acts. The evidence of the 1968 work stoppage was properly admitted by the court as being relevant to the extent of the present threatened work stoppage, the facts of which were pleaded. There is no merit in this contention.

The case of City of Springfield v. Clouse, 356 Mo. 1239, 206 S.W.2d 539, held that Art. I, Sec. 29, Const.Mo.1945, V.A.M.S., "that employees shall have the right to organize and to bargain collectively through representatives of their own choosing", did not apply to any public officers and employees. See also State ex rel. Missey v. City of Cabool, supra. The matter is thus settled, and no issue of denial of constitutional rights, as claimed, need be discussed.

The trial court's injunction specified that appellants be perpetually enjoined and restrained: "(a) From calling, ordering, instructing, recommending, precipitating, encouraging, inducing, permitting or engaging in or participating or taking part in, in whole or in part, or in any wise or manner, a strike, or other concerted work stoppage or concerted slow down or concerted interruption of operation, against the City of Grandview, Missouri, or upon its property; and (b) From refusing to answer all calls, to make routine radio checks, to keep logs, and maintain all equipment of the City of Grandview directly related, or essentially related, to the fighting of fires or the handling of emergencies." These words sufficiently specify the ultimate acts which were coercively threatened by appellants so as not to come within the rule of National Rejectors, Inc. v. Trieman, Mo., 409 S.W.2d 1, 18, "Cases in this state point out the necessity that an injunction clearly and specifically describe the acts and things enjoined."

The judgment is affirmed.