SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 2000, et al, Respondents,

v.

STATE of Missouri, et al., Appellants.

No. WD 66255.

Missouri Court of Appeals, Western District.

Feb. 20, 2007.

370

Michael Pritchett, Esq., Jefferson City, MO, for Appellants.

Greg A. Campbell, Esq., St. Louis, MO, for Respondents.

Before LOWENSTEIN, P.J., SPINDEN and NEWTON, JJ.

HAROLD L. LOWENSTEIN, Judge.

OVERVIEW

At the heart of this action for declaratory judgment is the contention by some state employees (through their union) that the State of Missouri, after allowing the employees an increase in pay in return for taking on extra job duties, then improperly denied (in the next fiscal year) those same employees a cost-of-living pay adjustment extended to almost all other state employees.

I. FACTS

This case arises out of a dispute over whether the State wrongfully denied a cost-of-living pay increase to a specific class of state employees, Probation and Parole Officers II,[1] for the 2004–2005 fiscal year.[2] In June 2004, the plaintiffs, five Probation and Parole Officers II, represented by the Service Employees International Union ("SEIU"), filed a petition in Cole County Circuit Court against the State of Missouri, the Office of Administration, the Commissioner of Administration, the Division of Personnel, the Director of the Division of Personnel, the Personnel Advisory Board ("PAB"), and the six members of the PAB individually.[3] Probation and Parole Officers II sought declaratory and injunctive relief based on their claims that the State retaliated against them for exercising their state constitutional and statutory rights to engage in union activity by excluding them from the 2004 cost-of-living pay increase. Additionally, Probation and Parole Officers II sought similar relief on a claim that the State violated Missouri statutes and regulations establishing a uniform and equitable pay system by excluding them from the cost-of-living pay increase.

The case was tried to the trial court, which ultimately ruled in favor of Probation and Parole Officers II, declaring that the State violated their statutory and constitutional right to engage in union activity. The trial court withheld ruling on their request for injunctive relief pending appeal and denied their claims that the State violated laws ensuring uniform and equitable pay. The State appeals from the trial court's judgment entered in favor of Probation and Parole Officers II declaring that the State retaliated against the employees for engaging in union activity by excluding them from the 2004 cost-of-living pay increase.

The salaries of Probation and Parole Officers II are set forth in what is referred

1. Prior to November 2003, the class of employees involved in this case was denominated "Probation and Parole Officers I." As set forth above, this set of employees was renamed "Probation and Parole Officers II" and a new class of employees was dubbed "Probation and Parole Officers I." To avoid confusion, this court will refer to the class of employees involved in this matter as "Proba-

tion and Parole Officers II," the current name.

2. A fiscal year in Missouri runs from July 1 through June 30 of the next calendar year.

3. For clarity, the defendants are referred to collectively as "the State."

to as the Uniform Classification and Pay System Pay Grid A ("Pay Grid A"). Pay Grid A consists of a number of horizontal rows, called ranges, and a number of vertical columns, called steps. State job classifications are assigned to particular ranges. The lower the range an employment class is assigned to, the higher the pay. Pay may also increase within an employment class by movement of an employee to steps farther to the right. The PAB, which governs the uniform pay and classification of all state agencies under the Governor, assigned Probation and Parole Officers II to the pay range of A21.

In 2003, the SEIU, Department of Corrections, and Office of Administration petitioned to have the Personnel Advisory Board reposition Probation and Parole Officers II to a higher-paying range based on increased employment duties and responsibilities of Probation and Parole Officers II. The Personnel Advisory Board declined to reposition Probation and Parole Officers II to a higher pay range. In November 2003, after meeting with representatives of the SEIU, the Office of Administration, and the Department of Corrections, the Personnel Advisory Board decided to institute a step adjustment for Probation and Parole Officers II. This step adjustment provided pay increases ranging from $1,044 to $1,596 per year, with an average pay increase of $1,215 per year. This pay increase took effect December 1, 2003, during fiscal year 2003–2004 and affected over 1,100 employees.

In April 2004, representatives from the Office of Administration met with representatives from the Senate and House Budget Committees. At the meeting, Senate and House Budget Committee personnel questioned the Office of Administration about the December 2003 pay increase for Probation and Parole Officers II and indicated an intent to "roll back" that pay increase. The stated reason for excluding Probation and Parole Officers II from the July 2004 pay increase was that they had just received "an additional raise only a few months earlier."

In May 2004, the Senate Appropriations Committee and House Budget Committee announced a general across the board $1,200 cost-of-living pay increase, effective July 1, 2004 (for the 2004–2005 fiscal year), for all state employees except Probation and Parole Officers II. The July 2004 general pay increase was intended as a cost-of-living pay adjustment for all state employees. Probation and Parole Officers II would not receive the general $1,200 pay increase, but those employees within the Probation and Parole Officers II class who received a pay increase less than $1,200 in December 2003 would receive the difference in order to bring their total pay increase to $1,200.

The trial court held that the State's exclusion of Probation and Parole Officers II from the July 2004 pay increase was a violation of the employees' statutory and constitutional rights to engage in union activity. The trial court based its decision on the "unprecedented" meeting between Office of Administration staff and Senate and House budget committee staff in which the Senate and House members expressed a desire to "roll back" the pay increase. The trial court also noted that, since at least 1994, all other employees and classes of employees who received pay increases during the fiscal year shared in the across the board cost-of-living pay increase for the following fiscal year. The trial court further found that the State failed to present any evidence establishing that the denial of the July 2004 general pay increase was motivated by legitimate, non-retaliatory reasons. Thus, the court granted the plaintiffs' claim for declaratory relief and withheld judgment on injunctive

relief pending appeal. The court further denied plaintiffs' third claim, that the State's actions violated statutes and regulations establishing uniform and equitable pay for state employees.

## II. STANDARD OF REVIEW

■ When reviewing a declaratory judgment, this court employs the same standard of review as in any other court-tried case. *McDermott v. Carnahan,* 934 S.W.2d, 285, 287 (Mo. banc 1996). This Court will affirm the judgment of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

## III. DISCUSSION OF POINTS ON APPEAL

### A. Probation and Parole Officers II were not denied a pay raise since they had already received one during the 2003–2004 fiscal year.

■ First, the State argues that the trial court erred in entering judgment for the Union because Probation and Parole Officers II were not denied a pay raise at all. The State maintains that Probation and Parole Officers II simply received their raise in December 2003 instead of July 2004. In effect, the State argues that "a raise is a raise" and that Probation and Parole Officers II were not denied the July 2004 cost-of-living adjustment because they received an earlier raise due to a step adjustment on the Pay Grid. This argument is not sustainable. Whether Probation and Parole Officers II did or did not receive a raise in December 2003 is irrelevant to the question of whether they were to receive a cost-of-living raise in July 2004. The record clearly indicates Probation and Parole Officers II were denied the July 2004 cost-of-living adjustment, and

the trial court was well within its range of discretion to arrive at this conclusion. This court defers to the trial court's findings of fact that the respondents were denied a raise. *Id.*

### B. Probation and Parole Officers II were not denied a pay raise because the funds were not appropriated.

■ Next, the State contends that, regardless of whether the failure to include Probation and Parole Officers II in the July 2004 cost-of-living adjustment should be considered a "denial" of that pay increase, the State was justified in doing so because funds were not appropriated to the Department of Corrections to provide the pay increase. While the legislature exercises discretion over how public employees are paid, the legislative body cannot use its discretion to violate constitutional and statutory rights of public employees. *State ex rel. Missey v. City of Cabool,* 441 S.W.2d 35, 42 (Mo.1969). Whether the decision to exclude Probation and Parole Officers II came from the state legislature, the Office of Administration, or any other state agency is not decisive.

### C. Even if there was a denial of a raise, it was not due to plaintiffs' union activity.

■ The State next argues that even if this court concludes that Probation and Parole Officers II were denied the July 2004 cost-of-living adjustment, the respondents failed to present direct or even indirect evidence demonstrating that the denial was the product of retaliation for engaging in lawful union activity.

■ Article I, Sections 8–9 of the Missouri Constitution (1945) protect the right of citizens to peacefully assemble and organize for any proper purpose.

Pursuant to these provisions, public employees are authorized to engage in union activities. *City of Springfield v. Clouse,* 356 Mo. 1239, 206 S.W.2d 539, 542 (1947). Sections 105.500, et seq., provide a "statutory vehicle" through which public employees may assert free speech and assembly rights provided by the First Amendment as well as article I, Sections 8–9 of the Missouri Constitution and seek redress for violations of those rights. *Curators of Univ. of Mo. v. Pub. Serv. Employees Local No. 45,* 520 S.W.2d 54, 56 (Mo.1975). Specifically, Section 105.510, RSMo, gives certain categories of public employees [4] "the right to form and join labor organizations and to present proposals to any public body relative to salaries and other conditions of employment through the representative of their own choosing." Section 105.510 mandates that "no such employee shall be discharged or discriminated against because of his exercise of such right [.]"

In its Conclusions of Law, the trial court concludes that the State violated the constitutional and statutory rights of Probation and Parole Officers II to engage in union activity when the State excluded them from the July 2004 cost-of-living adjustment. In support of this proposition, the trial court cited several facts that establish the State's "improper motive" in denying Probation and Parole Officers II the July 2004 cost-of-living adjustment. While the State denies that these facts establish improper or retaliatory motives, the following facts are essentially undisputed, and the reasonable inferences flowing from those facts support the trial court's conclusions.

First, the trial court notes that in every year from 1994 through 2004, classes of state employees that received raises during the fiscal year for any reason also shared in the cost-of-living adjustment provided the next fiscal year. This, the trial court concludes, indicates the State improperly singled out Probation and Parole Officers II for disparate treatment. The State takes issue with the trial court's comparison of Probation and Parole Officers II with other classes of state employees due to arguable distinctions between Probation and Parole Officers II and those classes.[5] However, the question of whether the employment classes are similar enough for comparison is a determination of fact within the trial court's discretion. *Murphy,* 536 S.W.2d at 32.

Next, the trial court cites evidence of the State Senate and House budget committee meetings and correspondence with the Office of Administration, which demonstrate the State's improper motives in denying Probation and Parole Officers II the July 2004 cost-of-living adjustment. In the April 2004 meeting with Office of Administration personnel, members of the Senate and House expressed a desire to "roll back" the pay increase Probation and Parole Officers II negotiated via Union representation. Soon thereafter, the then-chairs of the House and Senate appropriations committees sent a letter to the Office of Administration referencing the exclusion of Probation and Parole Officers II from the cost-of-living adjustment in addition to demanding that the Personnel Ad-

---

4. Probation and Parole Officers II are within the scope of employees permitted to engage in union activities. Section 105.510, RSMo excludes "police, deputy sheriffs, Missouri state highway patrolmen, Missouri national guard, [and] all teachers of all Missouri schools, colleges, and universities."

5. For example, the State notes the fact that many of the employment classes that received both pay increases contained very few members while Probation and Parole Officers II contains many members.

visory Board render its final decision on Probation and Parole Officers II's request for reclassification on the Pay Grid by June 30, 2004—just before the new fiscal year was to begin. Office of Administration witnesses testified that such a directive is essentially unprecedented.

The trial court further noted that the SEIU experienced "a decline in membership among Probation and Parole employees" as a result of the denial of the July 2004 cost-of-living adjustment. The record reveals that Union witness Ottomeyer indicated a decrease in membership after the denial, citing anecdotal testimony by former union members that they felt the denial was punishment for negotiating the previous pay increase.

The record does not support the State's argument that SIEU failed to present evidence demonstrating discrimination regarding the exclusion of Probation and Parole Officers II from the July 2004 cost-of-living increase. While the facts cited by the trial court in support of its conclusion that the State acted with discriminatory intent do not *mandate* a finding of discrimination, those facts certainly *support* a finding of discrimination. The targeting of Probation and Parole Officers II, the correspondence and statements of budget committee personnel, and the subsequent decrease in union activity due to the denial more than raise an inference of discriminatory intent in this case. The trial court was free to hold that these facts established discriminatory conduct prohibited by Section 105.510, RSMo, and that the State failed to proffer evidence sufficient to negate the inference of discrimination.

**D. Improper Shifting Burden of Proof.**

■ The State finally argues that the trial court improperly shifted the burden of proof from the plaintiffs to the State when it concluded that the State failed to present evidence that the denial of the July 1, 2004 cost-of-living increase to Probation and Parole Officers II was "motivated by legitimate objectives." This court disagrees.

■ As mentioned above, article I, Sections 8–9 of the Missouri Constitution (1945) and Section 105.510, RSMo provide certain categories of public employees the right to assemble and seek union representation as well as seek redress for violations of this right. *Missey*, 441 S.W.2d at 40–42. It follows, then, that in order to prevail on a claim of discrimination under Section 105.510 the claimant must present some degree of evidence demonstrating that the defendant engaged in conduct in contravention of the statute.

In this case, the trial court entered judgment for the plaintiffs because it found that the plaintiffs presented the more reliable depiction of the events, supported by evidence the trial court accepted. Conversely, the trial court chose not to accept the State's perspective on the issue. The trial court concluded that Probation and Parole Officers II were treated unfairly by the State and further concluded that the State's proffered reasons for that treatment did not negate the evidence presented by the Union. This is precisely a function the trier of fact is supposed to perform in deciding a dispute.

This result is consistent with *City of Cabool*, in which the Supreme Court of Missouri reversed the trial court's granting of the City's motion to dismiss discrimination claims brought by city employees under Section 105.510. *Id.* at 45. In that case, the Supreme Court held that the City violated the employees' rights by reducing their pay or laying them off due to their union involvement in negotiating an employment agreement. *Id.* at 41–42. The employees presented evidence that the

City reduced various employees' pay or laid them off in order to reduce the percentage of the workforce represented by the union. *Id.* at 38. The City argued that it did not violate the employees' rights because the employees had no right to join a union, and if they did, that the legislature had vested the City with the authority to fire employees for any reason. The Supreme Court rejected this argument and found for the employees.

In the case at bar, the trial court simply found, like the Court in *City of Cabool,* that the plaintiffs presented a more plausible case explanation for the adverse employment action than did the State. The State's argument essentially amounted to a denial that Probation and Parole Officers II were excluded from the July 2004 cost-of-living adjustment. The trial court was justified in reaching a different conclusion. In the alternative, the State argued that even if Probation and Parole Officers II were excluded from the cost-of-living pay increase, it was not due to discrimination. While reasonable minds could differ on this issue, the record supports the trial court's decision.

The judgment is affirmed.

All concur.