## RICE *vs.* THE STATE.

If a person assume to act as a physician, however ignorant of medical science, and prescribe with an honest intention of curing the patient, but through ignorance of the quality of the medicine prescribed, or of the nature of the disease, or both, the patient die in consequence of the treatment, contrary to the expectation of the person prescribing, he is not guilty of murder or manslaughter. But if the party prescribing have so much knowledge of the fatal tendency of the prescription, that it may be reasonably presumed that he administered the medicine from an obstinate, wilful rashness, and not with an honest intention and expectation of effecting a cure, he is guilty of manslaughter at least, though he might not have intended any bodily harm to the patient.

APPEAL from St. Charles Circuit Court.

Coulter, *for Appellant.*

Scott, J., *delivered the opinion of the Court.*

Rice was indicted for manslaughter in killing Mary Keithley. The indictment contained four counts. The first charged that Rice, claiming to be a physician, on the 1st of February, 1842, at the county of St. Charles, with force and arms, in and upon the body of Mary Keithley, then and there feloniously, ignorantly, and unskilfully did administer improper medicines, which caused the death of the said Mary Keithley, contrary to the form, &c. The second charged, that Rice, acting as a physician, the body of the said Mary Keithley, feloniously and ignorantly, and with culpable negligence, did steam, the said Mary Keithley then being in a state of pregnancy, in consequence whereof she died. The third count charged, that Rice, feloniously, negligently, and unskilfully, did excessively steam the said Mary Keithley, insomuch as to cause her death: and the fourth charged, that Rice feloniously, ignorantly, and in an unskilful manner, did treat the said Mary

Keithley, in consequence whereof she died. At the July term, 1843, of the St. Charles Circuit Court, Rice was tried under this indictment, and was found guilty, and fined two hundred and fifty dollars, and sentenced to thirty days' imprisonment.

On the trial, it appeared in evidence, that the defendant, Rice, was employed by Samuel Keithley, the husband of the deceased, to cure her of the " *sciotica*," with which she had been afflicted for some time. Rice was recommended by an acquaintance of Mrs. Keithley as a botanic physician. He represented to Keithley that he was a regular graduate in the ordinary way, and had practised six years, and that he could cure his wife. Keithley had consulted other physicians in relation to his wife's disease, and had learned from them that they could give only temporary relief. On the 16th January, 1842, Rice went to Keithley's house for the purpose of administering to his wife. He was informed of her situation, she being then about six weeks from the time of gestation, and was told that other physicians had cautioned him against the danger of vapor baths and emetics to his wife, in her condition at that time.

Rice affirmed, that he could use his remedies with perfect safety, and that he had practised on a woman in a condition like that of his wife. Keithley then told Rice, that as he had represented that he was a physician who had regularly graduated, and had practised for six years, although he was prejudiced against the botanic system of medicine, he would entrust the cure of his wife to him. Rice immediately commenced his labors, by steaming and giving lobelia, which caused instantaneous vomiting. The morning afterwards Mrs. Keithley arose from her bed, but soon returned to it, and never afterwards went out. The second day she was much worse, and on that or the day following Rice was sent for, who administered the same prescription as before, which produced similar effects. About a week after, Rice came again, and gave Mrs. Keithley, who was complaining very much, more medicine, believed to be lobelia. On taking leave of her, Rice shook her hand, and assured her she would now be better, and enjoy more health than she ever did. No sooner had Rice left her than she had a premature birth. She was delivered by a German reputed to be a regular accoucheur. The umbilical cord having been broken, the placenta was retained, in consequence of which another physician was sent for, who relieved her of it in the course of eighteen hours. In a few days after, she died. Mrs. Keithley had been married five years, and during that time had three children, always doing well after a birth, and was in better health when Rice commenced his practice on her than she had been for many years. Keithley, the husband of the deceased, testified, that he believed Rice's intentions were good, and that it was his wish to cure her.

Several physicians were examined as witnesses, who expressed different opinions as to the effect of emetics and vapor baths on women in a state of pregnancy. Witnesses were also introduced who testified to the success that had attended Rice's mode of practice; and some of them deposed that their wives, when pregnant, had been steamed by Rice, and taken lobelia, without any injurious effects.

Amongst others, the court was asked to give the following instruction, which

was refused, viz.:—"That if the jury believe, from the evidence, that Rice, in his treatment of Mrs. Keithley, acted with good and honest intentions, they will find him not guilty."

Motions for a new trial, and in arrest of judgment, were made, and overruled by the court.

We are at some loss to ascertain the offence with which the defendant is intended to be charged. The indictment concludes against the form of the statute, and, we presume, is founded on some statutory provision. The sentence of the court shows that it was not regarded as a common law offence, for the fine is greater than that which can be imposed for an offence at common law. If it was designed as an indictment for manslaughter under the twentieth section of the second article of the act concerning crimes and their punishments, we cannot see on what ground it can·be sustained: it has scarcely any of the requisites of an indictment for manslaughter, and so defective is it, that we are left to conjecture that it was intended to charge that offence. It will only be necessary to compare the form of an indictment for manslaughter with this indictment, to be satisfied of its gross departure from all rule. The only difference between a common law indictment for murder and manslaughter is, that the one contains the words, "malice aforethought," and the other does not.—2 Chitty's Crim. Law, 747.

The twentieth section of the second article of the act concerning crimes declares, "that every other killing of a human being, by the act, procurement, or culpable negligence of another, which would be manslaughter at the common law, and which is not excusable or justifiable, or is not declared in this article to be manslaughter in some other degree, shall be deemed manslaughter in the fourth degree."

In order to bring offence within this provision, it must appear that it was manslaughter at common law. Manslaughter is defined to be the unlawful killing of another without malice either express or implied, which may be either voluntarily, upon a sudden heat, or involuntarily, but in the commission of some unlawful act.— 4 Black., 191.

Then, to make the defendant guilty, it must be made appear that it was unlawful for him to administer physic to the deceased with his consent. We are not aware of the existence of a law which prohibits any man from prescribing for a sick person with his consent, if he honestly intended to cure him by his prescription, however ignorant he may be of medical science.

If a person assume to act as a physician, however ignorant of medical science, and prescribe with an honest intention of curing the patient, but through ignorance of the quality of the medicine prescribed, or of the nature of the disease, or both, the patient die in consequence of the treatment, contrary to the expectation of the person prescribing, he is not guilty of murder or manslaughter; but if the party prescribing have so much knowledge of the fatal tendency of the prescription, that it may reasonably be presumed that he administered the medicine from an obstinate wilful rashness, and not with an honest intention and expectation of effecting a cure, he is guilty of manslaughter, at least, though he might not have intended any bodily harm to the patient.

It is not lawful for a man to administer a medicine, of the dangerous effects of which he has had fatal experience.— Commonwealth *vs.* Thompson, 6 Mass. Rep., 134.

Lord Coke, in his fourth institute, 251, says—" If one that is of the mystery of a physician take upon him the cure of a man, and giveth him such physic as he dieth thereof, without any felonious intent, and against his will, it is no homicide." But he continues—"Briton saith, that if one that is not of the mystery of a physician undertakes the cure of a man, and he dieth of the potion or medicine, that is covert felony." But the soundness of this distinction between licensed and unlicensed physicians has been denied by very high authority, upon the ground that physic and salves were in use before licensed physicians and surgeons existed. (1 Hale, 423.) Blackstone coincides in opinion with Hale, and rejects the distinction between licensed and unlicensed physicians, and maintains the doctrine that if a physician or surgeon gives his patient a potion or plaster to cure him, which, contrary to his expectation, kills him, this is neither murder nor manslaughter, but misadventure. The distinction between licensed and unlicensed physicians can have no existence in this State, as there are no licensed physicians or surgeons.

Although a physician cannot be indicted for murder or manslaughter, if a patient die under his prescriptions when his intentions were honest, yet it has been held that *mala praxis* is a great misdemeanor, and an offence at common law, whether it be for curiosity or experiment, or by neglect.— Dr. Grovenvelt's case, 1 Lord Ray, 214; 3 Black., 122; 2 Russell on Crimes, 288. So, in the civil law, *imperitia medici culpa annumeralur*, lib. 4, tom. 3, sec. 7.

The form of the indictment may be found in 3 Chitty's Cr. L., 631, from which it may be gathered what constitutes the ingredients of that offence. The form there given, which is only an example, is substantially, that a midwife intending to deceive and impose upon others, under pretence that she was well skilled in the art of midwifery, caused herself to be employed as midwife, and did so unlawfully, wickedly, ignorantly, rashly, injuriously, unskilfully, improperly, and contrary to good practice in her art, deliver a pregnant woman, that she died. This may seem contrary to what has been before said, relative to the legality of one prescribing for another with his own consent; but however this may be, the law seems to be well settled, as it has been above stated.

There is no pretence that the defendant, Rice, acted from any other than honest motives. The chief witness against him, and he from whom we would most naturally look for the imputation of impure motives, if any existed, expressly declared, that he believed Rice's intentions were good, and that he wished to cure his wife. Nor is there any evidence that the defendant had any knowledge or information of the fatal tendency of his prescriptions: so far from any thing of this kind, the evidence leaves it doubtful whether his practice was unskilful or not. It seems he was a practitioner under the botanic system, and exercised his profession with as much skill and success, if not more, than most who had adopted it. The instruction, then, should have been given, and the motion in arrest sustained. The other judges concurring, the judgment of the court below is reversed.