Deborah WATTS as Next Friend for Naython Kayne Watts, Appellant/Cross–Respondent,

v.

LESTER E. COX MEDICAL CENTERS d/b/a Family Medical Care Center, Lester E. Cox Medical Centers, Respondent,

Melissa R. Herrman, M.D., Matthew P. Green, D.O., and William S. Kelly, M.D., Respondents/Cross–Appellants.

No. SC 91867.

Supreme Court of Missouri, En Banc.

July 31, 2012.

Rehearing Denied Sept. 25, 2012.

Opinion Modified on Court's Own Motion Sept. 25, 2012.

Andre M. Mura, Center for Constitutional Litigation, Washington, D.C., Roger Johnson, Johnson, Vorhees & Martucci, Joplin, for Watts.

Kent O. Hyde, David E. Overby, Hyde, Love & Overby LLP, Springfield, for Cox.

Jeremiah J. Morgan, Attorney General's Office, Jefferson City, for the Center and Physicians.

RICHARD B. TEITELMAN, Chief Justice.

Deborah Watts filed the underlying medical malpractice action alleging that her son, Naython Watts, was born with disabling brain injuries because Cox Medical Centers and its associated physicians (collectively, Cox) provided negligent health care services. The jury returned a verdict in favor of Watts and awarded $1.45 million in non-economic damages and $3.371 million in future medical damages. The trial court entered a judgment reducing Watts' non-economic damages to $350,000 as required by section 538.210.[1] The judgment also established a periodic payment schedule pursuant to section 538.220. The periodic payment schedule required immediate payment of half of all net future medical damages with the other half paid in equal annual installments over the next 50 years with an interest rate of 0.26 percent.

Watts asserts that the section 538.210 cap on non-economic damages violates the right to trial by jury and several other provisions of the Missouri Constitution.[2] Watts also asserts that the section 538.220 periodic payment schedule was arbitrary and unreasonable in that it does not assure full compensation due to the low interest rate and 50–year payment schedule.

---

1. All statutory references to statutes are to RSMo 2000.

2. Watts asserts that section 538.210 also violates the constitutional separation of powers, article II, section 1; equal protection, article I, section II; the prohibition against special legislation, article III, section 40; and the clear title and single subject requirements of article III, section 23 of the Missouri Constitution. Because this Court finds that section 538.210 violates the right to trial by jury in article I, section 22(a), these challenges need not to be addressed. Watts also asserts that section 538.220 violates equal protection and the right to due process. This Court need not reach these issues because the trial court misapplied the statute, and this Court will not reach constitutional issues if the case can be decided on statutory grounds.

Cox has filed a cross-appeal asserting that the trial court erred in its immediate award of future medical damages. Cox asserts that section 538.220 prohibits a lump sum payment of a portion of future medical damages and, instead, requires that all future medical damages be paid pursuant to a periodic payment schedule regardless of when the need for the medical damage payments will arise.

This Court holds that section 538.210 is unconstitutional to the extent that it infringes on the jury's constitutionally protected purpose of determining the amount of damages sustained by an injured party. Such a limitation was not permitted at common law when Missouri's constitution first was adopted in 1820 and, therefore, violates the right to trial by jury guaranteed by article I, section 22(a) of the Missouri Constitution. Accordingly, the judgment is reversed to the extent that it caps non-economic damages pursuant to section 538.210. To the extent that the decision in *Adams By and Through Adams v. Children's Mercy Hosp.*, 832 S.W.2d 898, 907 (Mo. banc 1992), is inconsistent with this decision, it is overruled.

This Court further holds that the trial court abused its discretion in entering a periodic payment schedule pursuant to section 538.220 that did not assure full compensation due to the interest rate and 50-year payment schedule.

Finally, this Court holds that section 538.220 gives the judge the authority to determine the manner in which future damages shall be paid, including what portion should be paid in future installments as to both medical and other future damages. Cox's argument on cross-appeal that all future damages must be paid in a lump sum is rejected.

In all other respects, the judgment is affirmed. The case is remanded.

## I. *Facts*

Cox provided prenatal care to Watts. On October 30, 2006, when she was approximately 39 weeks pregnant, Watts went to a clinic associated with Cox because she was experiencing cramping and because she detected decreased fetal movement. Dr. Herrman, who was then a third-year medical resident, examined Watts. The evidence at trial indicated that Dr. Herrman did not perform appropriate tests, failed to notify Watts of the significance of decreased fetal movement and failed to perform any further diagnostic monitoring. Dr. Herrman's supervisor, Dr. Kelly, signed off on Dr. Herrman's findings.

On November 1, 2006, Watts was admitted to the hospital due to lack of fetal movement. Watts was placed on a fetal monitor at 9:10 a.m. Watts' expert, Dr. Roberts, testified that this diagnostic monitoring indicated fetal hypoxia and acidosis and that the standard of care required immediate Caesarean-section delivery. Dr. Green, the second-year medical resident who was examining Watts, did not begin the Caesarean section until 10:45 a.m. Naython Watts was born with catastrophic brain injuries.

Watts sued Cox, claiming that its doctors' malpractice caused Naython's brain injuries. After trial, the jury returned a verdict in favor of Watts and awarded $1.45 million in non-economic damages and $3.371 million in future medical damages. The jury then reduced the future medical damages to present value pursuant to section 538.220. The jury reduced the future damages at a rate of 4 percent per annum, the estimated yield on a safe long-term investment, which worked out to a present value of $1,747,600. Cox then requested that it be permitted to pay the future damages in periodic payments pursuant to

section 538.220. In response, the trial court entered a payment schedule under which half of the future damages would be paid immediately in a lump sum and half would be paid over a 50–year period at a statutorily required interest rate of 0.26 percent.

## II. *Standard of Review*

■ This Court has exclusive jurisdiction over this appeal because it involves a challenge to the validity of a statute of this state. Mo. Const. article V, section 3. Watts' constitutional challenge to the validity of section 538.210 is subject to *de novo* review. *Rentschler v. Nixon,* 311 S.W.3d 783, 786 (Mo. banc 2010). "A statute is presumed valid and will not be held unconstitutional unless it clearly contravenes a constitutional provision." *Id.* at 786. Watts has the burden of proving that the statutes "clearly and undoubtedly" violate the constitution. *Id.*

■ Watts' argument that the trial court erred by requiring one-half of future medical damages to be paid pursuant to a section 538.220 periodic payment schedule "is subject to review only on the basis of its arbitrariness." *Vincent by Vincent v. Johnson,* 833 S.W.2d 859, 866 (Mo. banc 1992). Appellate courts ask whether a circuit court abused its discretion in crafting a periodic payment schedule for future damages. *Davolt v. Highland,* 119 S.W.3d 118, 139 (Mo.App.2003). "A trial court will be found to have abused its discretion when a ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Klotz v. St. Anthony's Medical Center,* 311 S.W.3d 752, 760 (Mo. banc 2010) (quoting *Swartz v. Gale Webb Transp. Co.,* 215 S.W.3d 127, 129–130 (Mo. banc 2007)).

■ Cox's cross appeal asserts that section 538.220 requires all future medical damages to be paid according to a periodic payment schedule. This is a statutory interpretation argument subject to *de novo* review. *Spradling v. SSM Health Care St. Louis,* 313 S.W.3d 683, 686 (Mo. banc 2010). This Court's role in interpreting statutes is to discern the intent of the legislature from the plain and ordinary meaning of the language used and to give effect to that intent, if possible. *Id.*

## III. *Section 538.210 Violates the Right to Trial by Jury*

Watts asserts that the $350,000 cap on non-economic damages established by section 538.210 violates the right to trial by jury guaranteed by article I, section 22(a) of the Missouri Constitution, which provides that "the right of trial by jury as heretofore enjoyed shall remain inviolate...." Cox notes correctly that in *Adams I,* the Court held that the statutory cap on non-economic damages does not violate the right to trial by jury. Cox asserts that *Adams* is dispositive. Watts asserts that *Adams* was decided wrongly and should be overruled.

### A. *Article I, Section 22(a) Requires that the Right of Trial by Jury as Heretofore Enjoyed Shall Remain Inviolate*

Article I, section 22(a) is one of the fundamental guarantees of the Missouri Constitution, providing "the right of trial by jury as heretofore enjoyed shall remain inviolate...." The plain language of article I, section 22(a) requires analysis of two propositions to determine if the cap imposed by section 538.210 violates the state constitutional right to trial by jury.

■ The first portion of article I, section 22(a) requires a determination of whether Watts' medical negligence action and claim for non-economic damages is included within "the right of trial by jury

as heretofore enjoyed." The phrase "heretofore enjoyed" means that "[c]itizens of Missouri are entitled to a jury trial in all actions to which they would have been entitled to a jury when the Missouri Constitution was adopted" in 1820. *State ex rel. Diehl v. O'Malley,* 95 S.W.3d 82, 85 (Mo. banc 2003). In the context of this case, the scope of that right also is defined by common law limitations on the amount of a jury's damage award. *See, Klotz,* 311 S.W.3d at 775 (Wolff, J., concurring). Therefore, if Missouri common law entitled a plaintiff to a jury trial on the issue of non-economic damages in a medical negligence action in 1820, Watts has a state constitutional right to a jury trial on her claim for damages for medical malpractice.

The second portion requires this Court to determine whether the right to trial by jury "remain[s] inviolate" when a statutory cap requires courts to reduce the jury's verdict. The plain meaning of the word "inviolate" means "free from change or blemish, pure or unbroken." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1190 (1993). Therefore, if the statutory cap changes the common law right to a jury determination of damages, the right to trial by jury does not "remain inviolate" and the cap is unconstitutional.

B. *The Nature of the Right To Jury Trial Heretofore Enjoyed*

 To determine the nature of the right to trial by jury as "heretofore enjoyed," a court must assess the state of the common law when the Missouri Constitution was adopted in 1820. *Diehl,* 95 S.W.3d at 85. Missouri's common law is based on the common law of England as of 1607. Section 1.010. English common law recognized medical negligence as one of five types of "private wrongs" that could be redressed in court. 2 W. Blackstone, Commentaries on the Laws of England 122 (1765; 1992 reprint). English common

law also permitted recovery of non-economic damages to give "the sufferer a pecuniary satisfaction." 3 W. Blackstone, Commentaries on the Laws of England 1112 (1765; 1992 reprint). Similarly, Missouri's territorial laws that pre-dated statehood provided for jury trials in "all civil cases of the value of one hundred dollars ... if either of the parties require it." Mo. Terr. Laws 58, sec. 13; *Diehl,* 95 S.W.3d at 85.

Accordingly, civil actions for damages resulting from personal wrongs have been tried by juries since 1820. *Diehl,* 95 S.W.3d at 92. Watts' action for medical negligence, including her claim for non-economic damages, "falls into that category" and is the same type of case that was recognized at common law when the constitution was adopted in 1820. *Rice v. State,* 8 Mo. 561 (Mo.1844) (medical negligence claims, referred to as *"imperitia meidi culpu annumeratur,"* are a "well settled" part of the "civil law"); *see also Klotz,* 311 S.W.3d at 775 (Wolff, J., concurring) (Mo. banc 2010); *Atlanta Oculoplastic Surgery P.C. v. Nestlehutt,* 286 Ga. 731, 691 S.E.2d 218, 222 (2010) ("non-economic damages have long been recognized as an element of total damages in tort cases, including those involving medical negligence"). Watts has a right to trial by jury on her claim for non-economic damages caused by medical negligence.

The scope of Watts' right to a jury trial, like the existence of the right, also is defined by Missouri's common law at the time the Missouri Constitution was adopted in 1820. By the late 1600s, the English common law authorized judges to exercise control over juries by granting new trials in cases in which the verdict was deemed inconsistent with the evidence. Theodore F.T. Plucknett, A CONCISE HISTORY OF THE COMMON LAW 135 (5th ed.1956) *cited in Klotz,* 311 S.W.3d at 776 (Wolff, J.,

concurring). Although English common law recognized the validity of some judicial control over jury verdicts, in *Dimick v. Schiedt*, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935), the United States Supreme Court, using the same historical analysis required for Missouri's right to jury trial, found that there were few common law precedents authorizing judicial remittitur but that the procedure was a part of the common law and, consequently, a part of the federal constitutional jury trial right. 293 U.S. at 482–483, 55 S.Ct. 296. This remittitur procedure has been followed since in the federal courts. *Klotz*, 311 S.W.3d at 776 (Wolff, J., concurring).

Like the English and early American common law, Missouri state common law also has recognized judicial remittitur. For instance, one of this Court's earliest cases following statehood stated that "if the jury find greater damages than the plaintiff has counted for, [and] the Court render judgment according to such finding, it is error." *Klotz*, 311 S.W.3d at 777 (Wolff, J., concurring)(quoting, *Carr & Co. v. Edwards*, 1 Mo. 137, 137 (Mo.1821)). Similarly, in *Hoyt v. Reed*, 16 Mo. 294, 294 (1852), the Court affirmed the trial court's remittitur of damages because the jury erroneously included an item for which the defendant was not liable. *See also Klotz*, 311 S.W.3d at 778 (Wolff, J., concurring). Judicial remittitur was and is an established concept in Missouri's common law.

Although early Missouri cases approved of judicial remittitur, there are cases that have held that judicial remittitur is improper. For instance, in *Gurley v. Mo. Pac.*, 104 Mo. 211, 16 S.W. 11, 17 (1891), the Court refused to remit the damages in a personal injury case because, "[w]hen we set aside any part of the verdict, we destroy its integrity, and we have no right to set ourselves up as triers of facts, and render another and different verdict."

*Gurley* stated that if a jury verdict clearly was based on passion or prejudice, the proper remedy was to set it aside in its entirety, but that absent such passion or prejudice, it should be upheld. *Id.* Likewise, in *Rodney v. St. Louis S.W. Ry.*, 127 Mo. 676, 30 S.W. 150, 150 (1895), and again in *Firestone v. Crown Ctr. Redevelopment Corp.*, 693 S.W.2d 99, 110 (Mo. banc 1985), this Court held that judicial remittitur was not a valid exercise of judicial power.

Although the precedent regarding judicial remittitur is inconsistent precedent, the inconsistency stems from a long-standing reluctance in the common law to tamper with the jury's constitutional role as the finder of fact. As noted by Judge Wolff in his concurring opinion in *Klotz*, 311 S.W.3d at 774, this history demonstrates that statutory caps on damage awards simply did not exist and were not contemplated by the common law when the people of Missouri adopted their constitution in 1820 guaranteeing that the right to trial by jury as heretofore enjoyed shall remain inviolate. The right to trial by jury "heretofore enjoyed" was not subject to legislative limits on damages.

## C. Do Damage Caps Allow the Right to Jury Trial to Remain Inviolate?

Having established that the right to trial by jury "heretofore enjoyed" did not include legislative limits on damages, the next inquiry is whether the right to trial by jury "remain[s] inviolate" after application of the section 538.210 cap on non-economic damages.

### 1. The Amount of Damages is a Fact for the Jury to Determine.

 Missouri law long has recognized that one of the jury's primary functions is to determine the plaintiff's damages. For instance, in *Richardson v. State Highway & Transp. Comm'n*, 863 S.W.2d 876 (Mo. banc 1993), this Court recognized that Mis-

souri's constitution gives the jury the right and responsibility to determine damages, stating, "[T]he jury here assessed liability and determined damages, thus fulfilling its constitutional task." *Id.* at 880; *accord, Klotz,* 311 S.W.3d at 775 (Wolff, J., concurring). Likewise, even though *Adams* held that a cap on non-economic damages did not violate the right to trial by jury, the Court still recognized that the "jury's primary function is fact-finding. This includes a determination of a plaintiff's damages." 832 S.W.2d at 907. It is beyond dispute that Missouri law always has recognized that "the jury's role in a civil case is to determine the facts relating to both liability and damages and to enter a verdict accordingly." *Estate of Overbey v. Chad Franklin Nat'l Auto Sales N., LLC,* 361 S.W.3d 364, 382 (Mo. banc 2012).[3] Like any other type of damages, the amount of noneconomic damages is a fact that must be determined by the jury and is subject to the protections of the article I, section 22(a) right to trial by jury.

## 2. *Section 538.210 violates the right to trial by jury.*

■ Once the right to a trial by jury attaches, as it does in this case, the plaintiff has the full benefit of that right free from the reach of hostile legislation. Section 538.210 imposes a cap on the jury's award of non-economic damages that operates wholly independent of the facts of the case. As such, section 538.210 directly curtails the jury's determination of damages and, as a result, necessarily infringes

on the right to trial by jury when applied to a cause of action to which the right to jury trial attaches at common law. Because the common law did not provide for legislative limits on the jury's assessment of civil damages, Missouri citizens retain their individual right to trial by jury subject only to judicial remittitur based on the evidence in the case. Statutory damage caps were not permissible in 1820 and, pursuant to the plain language of article I, section 22(a), remain impermissible today. Statutory caps on damages in cases in which the right to trial by jury applies necessarily changes and impairs the right of trial by jury "as heretofore enjoyed." The individual right to trial by jury cannot "remain inviolate" when an injured party is deprived of the jury's constitutionally assigned role of determining damages according to the particular facts of the case. Section 538.210 necessarily and unavoidably violates the state constitutional right to trial by jury.

The foregoing analysis has been utilized by a number of other states with constitutions that, like Missouri's, require that the right to jury trial shall "remain inviolate." These states also have concluded that, because the assessment of damages is one of the factual findings assigned to the jury rather than to a judge, any limit on damages that restricts the jury's fact-finding role violates the constitutional right to trial by jury.

For instance, in *Sofie v. Fibreboard Corp.,* 112 Wash.2d 636, 771 P.2d 711 (1989), the court recognized "that the

---

**3.** The United States Supreme Court also has recognized that the jury's primary role is to ascertain the facts of a case. The "controlling distinction between the power of the court and that of the jury is that the former is the power to determine the law and the latter to determine the facts." *Dimick,* 293 U.S. at 486, 55 S.Ct. 296. This means that, even when a verdict is set aside as excessive due to

bias or prejudice, the court must allow the winning party a right to a new trial because both plaintiff and defendant:

> [R]emain entitled, as they were entitled in the first instance, to have a jury properly determine the question of liability and the extent of the injury by an assessment of damages. Both are questions of fact.

*Id.*

jury's fact-finding function included the determination of damages. This evidence can only lead to the conclusion that our constitution ... protects the jury's role to determine damages." *Id.* at 716. Consequently, " 'when you start to put limitations on [the jury's ability to find damages], you have, in fact, invaded the province of the jury and have not preserved the right to a trial by jury inviolate.' " *Id.* at 722 (quoting Washington Senate Journal, 49th Legislature 1986, at 449).

*Lakin v. Senco Prod., Inc.,* 329 Or. 62, 987 P.2d 463 (1999), similarly held "[t]he amount of damages ... from the beginning of trial by jury, was a 'fact' to be found by jurors," therefore, a statutory cap violates the right to jury trial because "to the extent that the jury's award exceeds the statutory cap, the statute prevents the jury's award from having its full and intended effect." *Id.* at 470–73 (quoting Charles T. McCormick, Handbook on the Law of Damages 24 (1935)).

*Nestlehutt* and *Moore v. Mobile Infirmary Ass'n,* 592 So.2d 156 (Ala.1991), reached similar conclusions. Noting that Dimick held that "the determination of damages rests 'peculiarly within the province of the jury,' " *Nestlehutt* also concluded that "caps infringe on a party's constitutional right ... to a jury determination as to noneconomic damages." 691 S.E.2d at 222–23 (quoting *Dimick,* 293 U.S. at 480, 55 S.Ct. 296). *Moore* held that statutory damage caps on common law causes of action violate the right to trial by jury because "the trial judge is required summarily to disregard the jury's assessment of the amount of noneconomic loss, that species of damages lying most peculiarly within the jury's discretion." 592 So.2d at 163.

*Smith v. Dep't of Ins.,* 507 So.2d 1080 (Fla.1987), similarly recognizes that a limitation on the amount of damages that can be recovered by an injured party violates the Florida constitution's guarantee of both the right to jury trial and the right of access to courts, stating:

> Access to courts is granted for the purpose of redressing injuries. A plaintiff who receives a jury verdict for, e.g., $1,000,000, has not received a constitutional redress of injuries if the legislature statutorily, and arbitrarily, caps the recovery at $450,000. Nor, we add, because the jury verdict is being arbitrarily capped, is the plaintiff receiving the constitutional benefit of a jury trial as we have heretofore understood that right. Further, if the legislature may constitutionally cap recovery at $450,000, there is no discernible reason why it could not cap the recovery at some other figure, perhaps $50,000, or $1,000, or even $1.

*Id.* at 1088–89.

This Court holds that section 538.210 violates the article I, section 22(a) right to trial by jury.

### 3. *Adams Violates the Right to a Jury Determination of Damages.*

Cox asserts, consistent with the rationale in *Adams,* that the section 538.210 cap on non-economic damages does not limit the jury's constitutional role in determining damages because the jury remains free to award damages consistent with the evidence in the case. *Adams* held that section 538.210 does not violate the right to trial by jury because the cap is applied by the trial court after the "jury completed its constitutional task" of determining the plaintiff's economic and non-economic damages. *Id.* at 907. Although recognizing that the jury's "primary function" is to find facts, including the amount of damages, *Adams* reasoned that a statutory cap on damages lets the jury do its job and then

simply directs the court not to enter the full amount of the verdict in the judgment if the amount of non-economic damages exceeds the statutory cap. *Id.* In other words, application of the damage cap "is a matter of law, not fact, and not within the purview of the jury." *Id.* Furthermore, *Adams* found that even if a damages cap interferes with the jury's determination of damages, it does not violate the right to jury trial because that right does not protect the jury's determination of damages. *Id.*

There are four flaws in the *Adams* rationale. First, *Adams* fundamentally misconstrues the nature of the right to trial by jury. While article I, section 22(a) sets the constitutional role of the jury, it does so by guaranteeing an individual right to a trial by jury. The application of section 538.210 may permit the jury to perform its constitutional role, but it deprives the individual of his or her right to the damages awarded by the jury. The constitutional significance of the jury's role in determining damages is reflected in the analytical basis for determining whether the right to trial by jury attaches-if the action is a civil action for damages, then the right to a jury trial attaches and must "remain inviolate." *Diehl,* 95 S.W.3d. at 84. Because the constitutional right to a civil jury trial is contingent upon there being an action for damages, statutory limits on those damages directly curtail the individual right to one of the most significant constitutional roles performed by the jury—the determination of damages. The argument that section 538.210 does not interfere with the right to trial by jury because the jury had a practically meaningless opportunity to assess damages simply "pays lip service to the form of the jury but robs it of its function." *Sofie,* 771 P.2d at 721; *see also Nestlehutt,* 691 S.E.2d at 223 ("[b]y requiring the court to reduce a noneconomic damages award determined by a jury that

exceeds the statutory limit, [a statutory cap] clearly nullifies the jury's findings of fact regarding damages and thereby undermines the jury's basic function"); *Moore,* 592 So.2d at 164 ("[b]ecause the statute caps the jury's verdict automatically and absolutely, the jury's function, to the extent the verdict exceeds the damages ceiling, assumes *less* than an advisory status")(emphasis in original).

Second, *Adams* further misconstrues the right to trial by jury because it specifically permits legislative limitation of an individual constitutional right. *Adams* justifies the section 538.210 damage cap because the jury nominally is permitted to find the facts while the judge statutorily is required to make a separate legal determination that applies the damages cap. The unavoidable result of this rationale is that right to trial by jury is directly subject to legislative limitation. This holding is untenable for the simple reason that a statutory limit on the state constitutional right to trial by jury amounts to an impermissible legislative alteration of the Constitution. *Diehl,* 95 S.W.3d at 85, 92 ("[t]he right to trial by jury, where it applies, is a constitutional right, applies 'regardless of any statutory provision,' and is 'beyond the reach of hostile legislation'")(citing *Lee v. Conran,* 213 Mo. 404, 111 S.W. 1151, 1153 (1908)); *see also Missouri Alliance for Retired Am. v. Dept. of Labor and Indust. Relations,* 277 S.W.3d 670, 682 (Mo. banc 2009) (a statute may not infringe on a constitutional right; if the two are in conflict, then it is the statute rather than the constitution that must give way).

*Adams* did not acknowledge, must less distinguish, the myriad cases recognizing that a statute may not limit constitutional rights, which are beyond the reach of hostile legislation. Instead, it cited to *De May v. Liberty Foundry Co.,* 327 Mo. 495, 37 S.W.2d 640 (1931), to argue that the

legislature could abolish a common law cause of action for damages against an employer when it substituted a system of workers' compensation in its stead, and then said that if this were true, then it must be that "[i]f the legislature has the constitutional power to create and abolish causes of action, the legislature also has the power to limit recovery in those causes of action." *Adams*, 832 S.W.2d at 907.

This statement is *Adams'* total analysis on this issue, and other cases upholding statutory damage caps simply repeat this mantra. They do so without any further analysis and without addressing how this reasoning can stand in the face of their continued recognition that statutes cannot limit constitutional rights. Indeed, if the two were equivalent, then it would be *De May* and similar cases that would have to be overruled. But *De May* itself recognized that its analysis, even if it is accepted as valid, applies only *"when the cause of action cognizable at law is abrogated or removed"*—that is, it held only that if there is no cause of action, there is nothing to which the right to jury trial can attach. *Id.* at 649. Nothing in it suggested a legislature can take constitutional protections from a plaintiff seeking relief under existing causes of action. If that could be done, it would make constitutional protections of only theoretical value—they would exist only unless and until limited by the legislature. Such rights would not be rights at all but merely privileges that could be withdrawn.

Third, *Adams* cites to the United States Supreme Court decision in *Tull v. United States*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), for the proposition that the right to jury trial does not extend to the determination of damages, even though determining the facts is the jury's primary function. As established above, Missouri law long has recognized that the

jury's role is precisely to determine both liability and damages and, further, that the article I, section 22(a) right to trial by jury protects the individual right to a jury determination of damages. Moreover, *Tull* is irrelevant because it interprets the federal constitution and deals only with civil penalties, not common law damages. *See Sofie*, 771 P.2d at 725. In *Tull*, the Supreme Court held that the Seventh Amendment right to trial by jury was not violated by a federal statute that permitted the trial judge to set the amount of a civil penalty. The Supreme Court held that a litigant has the right to have a jury determine liability, but does not have a constitutional right to a jury determination of a civil penalty. *Id.* at 426, 107 S.Ct. 1831. The Court reasoned that, with respect to federal constitutional right to a jury trial, "only ... those incidents which are regarded as fundamental, as inherent in and of the essence of the system of trial by jury, are placed beyond the legislature" and that the assessment of a civil penalty is not one of those "most fundamental elements." *Id.* The irrelevance of *Tull* to the jury trial analysis was confirmed in *Feltner v. Columbia Pictures Television, Inc.*, in which the Court stated that:

> In *Tull* ... we were presented with no evidence that juries historically had determined the amount of civil penalties to be paid to the Government. Moreover, the awarding of civil penalties to the Government could be viewed as analogous to sentencing in a criminal proceeding. Here, of course, there is no similar analogy, and there is clear and direct historical evidence that *juries, both as a general matter and in copyright cases, set the amount of damages awarded to a successful plaintiff. Tull is thus inapposite.* As a result, if a party so demands, *a jury must determine the actual amount of statutory damages under [the Copyright Act] in*

order to preserve "the substance of the common-law right of trial by jury." 523 U.S. 340, 355, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) (quoting *Tull*, 481 U.S. at 426, 107 S.Ct. 1831) (internal citations omitted) (emphasis added).

Additionally, *Adams* reaches its conclusion without citation to any applicable Missouri law. Instead, *Adams* relies on a Virginia case, *Etheridge v. Med. Ctr. Hosp.*, 237 Va. 87, 376 S.E.2d 525 (1989), and *Tull*. In addition to the fact that the interpretation of the Missouri Constitution should be informed by Missouri law, *Adams* failed to note that *Etheridge* is analytically irrelevant because, unlike Missouri's guarantee that the right to trial by jury shall "remain inviolate," the Virginia Constitution merely states that "trial by jury is preferable to any other, and ought to be held sacred." Va. Const. art. I, § 11. The Virginia Constitution simply does not provide the same unyielding jury trial right as that provided by the Missouri Constitution, which demands that the right "remain inviolate." The different language entails a different analysis. *See also Nestlehutt*, 691 S.E.2d at 224 n. 8 (noting that Virginia has a "less comprehensive constitutional jury trial provision" and, on this basis, finding *Etheridge* unpersuasive). *Adams* erred in relying on *Etheridge* instead of the plain language of article I, section 22(a) and Missouri common law precedent.

■ The preceding analysis shows that the reasoning of *Adams* and the cases it relied on are flawed. The only remaining reason to uphold *Adams* would be *stare decisis* considerations. "The doctrine of *stare decisis* promotes security in the law by encouraging adherence to previously decided cases." *Independence–Nat. Educ. Ass'n v. Independence Sch. Dist.*, 223 S.W.3d 131, 137 (Mo. banc 2007). "But, the adherence to precedent is not absolute,

and the passage of time and the experience of enforcing a purportedly incorrect precedent may demonstrate a compelling case for changing course." *Med. Shoppe Intern., Inc. v. Dir. of Revenue*, 156 S.W.3d 333, 335 (Mo. banc 2005).

Overturning erroneous precedent is particularly important where the precedent violates a constitutional right because:

If the people are dissatisfied with the construction of a statute, the frequently recurring sessions of the legislature afford easy opportunity to repeal, alter, or modify the statute, while the constitution is organic, intended to be enduring until changed conditions of society demand more stringent or less restrictive regulations, and, if a decision construes the constitution in a manner not acceptable to the people, the opportunity of changing the organic law is remote. Moreover, no set of judges ought to have the right to tie the hands of their successors on constitutional questions, any more than one general assembly should those of its successors on legislative matters.

*Mountain Grove Bank v. Douglas Cnty.*, 146 Mo. 42, 47 S.W. 944, 947 (1898).

Applying these principles, while this Court always is hesitant to overturn precedent, it nonetheless has followed its obligation to do so where necessary to protect the constitutional rights of Missouri's citizens. For example, in *Independence*, the Court was required to interpret the meaning of article I, section 29 of Missouri's constitution, which commands that "employees shall have the right to collectively bargain." Mo. Const., art. I, § 29. This constitutional provision does not limit the right to bargain collectively only to private sector employees, as *City of Springfield v. Clouse*, 356 Mo. 1239, 206 S.W.2d 539 (1947), had stated. This Court, therefore, overruled *Clouse*, stating:

*Clouse* contradicts the plain meaning of article I, section 29, which states that employees, without qualification, have the right to collective bargaining. Deviations from clear constitutional commands—although longstanding—do not promote respect for the rule of law. If the people want to change the language of the constitution, the means are available to do so. This Court will not change the language the people have adopted. *Clouse* is overruled.

223 S.W.3d at 137 (emphasis in original) (internal citations omitted).

Similarly, in *State v. Baker*, 524 S.W.2d 122 (Mo. banc 1975), the Court addressed the constitutional validity of a statute imposing mandatory consecutive sentences on defendants who were found guilty of a second offense prior to being sentenced for their first offense, a consequence that Missouri statutes did not impose on those who already had been sentenced on their first offense prior to being found guilty of their second offense. This Court overruled precedent upholding the statute because it found this irrational difference in treatment of comparably situated defendants violated defendants' equal protection rights. *Id.* at 129–31. Likewise, *Barker v. St. Louis Cnty.*, 340 Mo. 986, 104 S.W.2d 371 (1937), reviewed the constitutional validity of a statute that required an owner to seek compensation within 20 days of a government taking or waive his right to compensation. *Id.* at 377. *Barker* found that the statute violated the plain language of article II, section 21 of the Constitution of 1875, which stated, "[P]rivate property shall not be taken or damaged for public use without just compensation." *Id.* at 377–78. Although *Petet v. McClanahan*, 297 Mo. 677, 249 S.W. 917 (1923), had upheld the statute, the Court found that it was impelled to overrule that case because "if there is no doubt that a statute . . . is in conflict with the Constitution, then it is the duty of any court, whose duty it is to decide, to declare the conflict and declare the statute void." *Barker*, 104 S.W.2d at 377.[4]

*Adams'* erroneous interpretation of article I, section 22(a) of Missouri's constitution negated the guarantee of that section that the right of Missouri citizens to jury trial as heretofore enjoyed shall remain

---

4. Other cases overruling prior case interpretations of a constitutional provision include *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003) (overturning dozens of cases that previously had found that, under article V, section 18 of the Missouri Constitution, courts must view the evidence in administrative decisions in a light most favorable to the decision); *Alumax Foils Inc. v. City of St. Louis*, 939 S.W.2d 907 (Mo. banc 1997) (overturning a half century of precedent and finding that municipal ordinances that raise revenue are not "revenue laws of this state" under article V, section 3 of the Missouri Constitution because such ordinances "raise[ ] revenue only within a single political subdivision for the benefit of that political subdivision."); *Mercantile Bank of Illinois, N.A. v. Sch. Dist. of Osceola*, 834 S.W.2d 737 (Mo. banc 1992) (reversing precedent and finding that the prohibition on subdivisions carrying debt in article VI, section 26(a) did not preclude subdivisions from entering into contracts that obligated them to make payments in future years); *Barnes Hosp. v. Leggett*, 589 S.W.2d 241 (Mo.1979) (overruling earlier cases that held that if any part of a building was used for profit none of the building could be excluded from property taxes under the charitable exception in article X, section 6); *State ex rel. Stanhope v. Pratt*, 533 S.W.2d 567 (Mo. banc 1976) (overturning nearly a century of precedent and holding that imprisonment for contempt for failure to pay alimony did not violate article I, section 11's prohibition on imprisoning people for failure to pay debt as long as the person was financially able to pay); and *Hill v. State Dept. of Public Health and Welfare*, 503 S.W.2d 6, 10–11 (Mo. banc 1973) (reversing precedent and finding that "welfare benefits are in the nature of property rights . . . and as such are 'private rights' within the meaning of [the Constitution].").

inviolate. It permitted legislative enactments to infringe on this constitutional guarantee, turning what was a right into a mere privilege. *Adams* is overruled to the extent that it holds that the section 538.210 caps on noneconomic damages do not violate the right to trial by jury. Because the trial court reduced the non-economic damages in reliance on *Adams*, that aspect of the judgment is reversed.

## IV. *Section 538.220*

Watts asserts that the periodic payment schedule set out in section 538.220 is arbitrary and unreasonable in that it prevents a plaintiff from receiving the full amount of compensation awarded by the jury. This Court has recognized that the general purpose of chapter 538 is to reduce the cost of medical malpractice and that the specific purpose of section 538.220 is to spread that cost over time and to guard against squandering the judgment while reducing future burdens on government social services. *Vincent*, 833 S.W.2d at 867. Section 538.220 states in relevant part:

> At the request of any party to such action made prior to the entry of judgment, the court shall include in the judgment a requirement that future damages be paid in whole or in part in periodic or installment payments if the total award of damages in the action exceeds one hundred thousand dollars. Any judgment ordering such periodic or installment payments shall specify a future medical periodic payment schedule, which shall include the recipient, the amount of each payment, the interval between payments, and the number of payments. The duration of the future medical payment schedule shall be for a period of time equal to the life expectancy of the person to whom such services were rendered, as determined by the court, based solely on the evidence of such life expectancy presented by the plaintiff at trial. The amount of each of the future medical periodic payments shall be determined by dividing the total amount of future medical damages by the number of future medical periodic payments. The court shall apply interest on such future periodic payments at a per annum interest rate no greater than the coupon issue yield equivalent, as determined by the Federal Reserve Board, of the average accepted auction price for the last auction of fifty-two-week United States Treasury bills settled immediately prior to the date of the judgment. The judgment shall state the applicable interest rate. *The parties shall be afforded the opportunity to agree on the manner of payment of future damages, including the rate of interest, if any, to be applied, subject to court approval. However, in the event the parties cannot agree, the unresolved issues shall be submitted to the court for resolution, either with or without a post-trial evidentiary hearing which may be called at the request of any party or the court.* If a defendant makes the request for payment pursuant to this section, such request shall be binding only as to such defendant and shall not apply to or bind any other defendant.

(Emphasis added).

The first two sentences and the second-and-third-to-last sentences, italicized above, apply to the award of all types of future damages, while the middle sentences, not italicized above, apply to the special case of periodic future medical payments should they be ordered. Looking at the portions of the statute addressing future damages generally, once the defendant requests a periodic payment schedule for future damages, then the first sentence of section 538.220.2 plainly requires the trial court to "include in the judgment a

requirement that future damages be paid in whole or in part in periodic or installment payments." *Id.; see also Davolt v. Highland,* 119 S.W.3d 118, 138 (Mo.App. 2003). The second-and third-to-last sentences of the section make it clear that, in the final analysis, it was up to the court to determine how large a part of the future damages would be included in such future periodic payments, for it says that the court must approve any agreement of the parties as to the manner of payment and interest rate to be paid and that, if no agreement is reached, then the court shall resolve the manner of future payments and the interest to be paid. These provisions expressly left the issue of how to pay future damages and at what interest rate in the hands of the court.

Here, the future damages as to which periodic payment was requested were all future medical damages. The middle portion of section 538.220.2 is directly specifically at the manner of paying this type of future damages. It requires that payments be spread out in equal payments over the recipient's life expectancy and determined by reference to a particular interest-rate benchmark. It takes from the court and the parties the opportunity to agree upon a different interest rate and payment schedule. But it does not remove from the court its authority to determine what part of the future medical damages shall be subject to the payment schedule, for the first sentence of section 538.220.2 expressly applies to all future damages, and no portion of the statute addressing future medical damages removes this authority from the trial courts.[5]

The statute grants the trial court discretion as to whether to award future medical damages wholly in periodic payments or in part in a lump sum. Each plaintiff's future medical costs will be spread out over vastly differing time horizons. Some injured parties may require surgery or other extensive care in the period immediately following trial, while others may have only minimal immediate medical needs because their condition is chronic or the onset of some symptoms will not reach their peak for some years. The legislature did not intend that the plaintiff who needs an immediate operation or has other immediate medical or medical-device needs not receive sufficient funds to pay for their needs until years hence, nor did it intend that a potentially hostile opposing party decide whether an injured person will receive sufficient funds to pay for medical needs in a timely manner.

 If more than one interpretation of a statute is possible, this Court will interpret a statute in a manner that renders it constitutional. *State ex rel. Praxair, Inc. v. Missouri Public Serv. Comm'n,* 344 S.W.3d 178, 187 n. 7 (Mo. banc 2011). This Court, therefore, interprets the statute to permit the trial court to consider the needs of the plaintiff and the facts of the particular case in deciding what portion of future medical damages will be paid in a lump sum and what portion will be paid out over a periodic payment schedule that accords with the parameters set out in the statute.

Cox's cross-appeal is denied because the statute does not require that all future medical damages be paid according to a payment schedule.

---

**5.** The dissent would find that the "in whole or in part" language "simply requires the trial court to comply with the party's request if they ask for a partial lump sum and partial installment payment plan" for future damages owed. Nothing in the statute, however, invests the parties with the power to determine if all or only part of future damages should be included in the periodic payment schedule.

Watts asserts the section 538.220 periodic payment schedule was arbitrary and unreasonable in that it does not assure full compensation due to the low interest rate and 50–year payment schedule. The jury, as required by section 538.215, discounted Naython's future medical damages to present value. The requirement that future medical damages be discounted to present day value necessarily means that full compensation for those future damages is, in large part, dependent on the statutory interest rate being the same as the rate of health care inflation over the course of the payment schedule. Watts offered expert testimony from two economists who concluded that the 50–year payment schedule, coupled with a 0.26 percent interest rate, virtually guaranteed that inflation in health care costs would result in Naython having insufficient funds to pay his future medical costs. Under these circumstances, the periodic payment schedule affords none of the financial security intended by the statute. Although section 538.220.2 required the court to establish some periodic payment schedule, once a present value reduction was made, use of an inconsistent future damages interest rate guaranteed that the jury's damages award would not actually cover Naython's future medical damages and, therefore, would take from him the full value of the jury's award. Consequently, the judgment is reversed and the case is remanded. On remand, the court shall enter a new periodic payment schedule that, consistent with the goal of reducing medical malpractice costs, also ensures that Naython will receive the benefit of the jury's award for future medical care.

## V. *Conclusion*

The judgment is reversed to the extent it caps non-economic damages pursuant to section 538.210. Furthermore, the trial court erred by entering a periodic payment schedule that does not assure full recovery. In all other respects, the judgment is affirmed. The case is remanded.

STITH and DRAPER, JJ., and MIDKIFF, SP.J., concur.

RUSSELL, J., concurs in part and dissents in part in separate opinion filed.

BRECKENRIDGE and PRICE, JJ., concur in opinion of RUSSELL, J.

FISCHER, J., not participating.

MARY R. RUSSELL, Judge.

The facts of this case are tragic. The Watts family has suffered a misfortune that they will have to live with for many years to come. Despite this unfortunate situation, it is this Court's duty to analyze the constitutional validity of a statute regardless of how sympathetic the injury might be. The legislature has passed a limitation on the amount of noneconomic damages an injured person can receive in a tort action. Whether this is "good policy" is not a question for this Court. This Court's duty is to determine whether the provision at issue violates the Missouri Constitution. As Chief Justice Roberts noted in *National Federation of Independent Business v. Sebelius,* courts have "the authority to interpret the law;" but "[courts] possess neither the expertise nor the prerogative to make policy judgments. Those decisions are entrusted to our ... elected leaders...." —— U.S. ——, 132 S.Ct. 2566, 2579, 183 L.Ed.2d 450 (2012). "It is not [a court's] job to protect the people from the consequences of their political choices." *Id.* This Court's well-established precedent in *Adams by and Through Adams v. Children's Mercy Hospital,* 832 S.W.2d 898, 907 (Mo. banc 1992), has previously determined that section 538.210 does not violate Missouri's constitutional guarantee to a jury trial. "Policy

judgments" must be refrained from, and instead this Court must determine whether section 538.210 remains constitutional. Insofar as the majority opinion overrules this Court's well-reasoned, longstanding precedent in *Adams* without persuasive justification, I respectfully dissent. However, I concur in the majority opinion's analysis of the interest rate and payment schedule issues.

### *Adams* is controlling in this case

The majority holds that the noneconomic damages cap of section 538.210 violates the Missouri Constitution, overruling more than 20 years of precedent that authoritatively decided this issue in *Adams*. The majority opinion reflects a wholesale departure from the unequivocal law of this state and leaps into a new era of law. I do not agree with the majority opinion's disregard of *stare decisis* and, more importantly, of settled Missouri constitutional law.[1]

Writing for the majority in *Adams*, Judge Robertson's holding that section 538.210 does not violate the Missouri Constitution's right to a jury trial is dispositive in this case. 832 S.W.2d at 907. *Adams* reasoned that the role of the jury is fact-finding. *Id.* This role requires the jury to determine liability and measure damages, both economic and noneconomic, as a result of liability. *Id.* Once it has completed its fact-finding duty, it has completed its constitutional task. *Id.* It is then the court's duty to apply the law. *Id.*

Section 538.210 establishes the substantive legal limits of a plaintiff's damage remedy. *Id.* As such, it is a matter of law, not fact. *Id.* The court applies the law of section 538.210 only after the jury has completed its fact-finding duty. *Id.* Because the court does not apply the law of

section 538.210 until after the jury has performed its constitutional function, this statute does not violate the constitutional right to a trial by jury under article I, section 22(a) of the Missouri Constitution. *Id.* Further, this Court noted in *Adams* that the legislature is permitted to abrogate a cause of action cognizable under the common law completely and, therefore, has the power to limit recovery in the same causes of action. *Id.*

The majority's reasons for departing from the holding in *Adams* are not persuasive because the issue of whether the legislature may abrogate the right to a trial by jury in a specific case is not essential to the constitutional validity of section 538.210. The majority opinion in this case assumes that the validity of the holding in *Adams* depends on the legislature's authority to abrogate common law claims *in toto*. *See also Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 773–74 (Mo. banc 2010) (Wolff, J., concurring). The holding in *Adams*, however, rested primarily on the fact that section 538.210 honors the right to a trial by jury. 832 S.W.2d at 907. As long as the jury finds the facts and the trial court does not interfere with the jury's fact-finding, the jury has served its constitutional task. *Id.* The trial court's application of the law to the facts after they have been found by the jury does not harm to the right to a trial by jury. *Id.*

The majority's distinction between the jury's "constitutional task" and the "individual right" to a jury trial is meaningless and a distinction in name only. This argument confuses the judicial process by which claims are determined with the substance of the claims themselves. In general, the legislature is free to establish the substance of a claim, as, for instance, to

---

1. Just this year, this Court upheld section 538.210 with regard to *statutorily* created

causes of action. *Sanders v. Ahmed*, 364 S.W.3d 195, 204 (Mo. banc 2012).

allow or disallow punitive damages, but the Constitution guarantees a procedure for adjudicating that substantive claim. *Scott v. Blue Springs Ford Sales, Inc.,* 176 S.W.3d 140, 142 (Mo. banc 2005). The right to jury trial does not limit the legislature's authority to determine what the elements of damages shall be.

The jury serves no function other than providing an individual his right to a trial by jury. As such, the jury's "constitutional task" is to provide one with his or her "individual right" to a trial by jury. Section 538.210 does not prevent the jury from assessing damages. It is only after the jury assesses damages that the trial court applies section 538.210. When the jury performs its "constitutional task," the plaintiff is afforded his or her "individual right" to a trial by jury.

Section 538.210 did not violate the Missouri Constitution in *Adams* in 1992, and it does not violate the Constitution today. I would uphold section 538.210 consistent with this Court's 20 years of controlling precedent.

### Other states have agreed with this Court's reasoning in *Adams*

Although the majority opinion cites to other jurisdictions striking statutes limiting noneconomic damages, many states have held that such limitations do not violate their states' respective right to a jury trial. The majority opinion focuses on the "inviolate" language of Missouri's Constitution, arguing that this language distinguishes Missouri's right to a jury trial from its sister states' jury trial guarantees. While I recognize that Missouri's constitutional language differs from the Seventh Amendment, cases from jurisdictions with the same "inviolate" language as the Missouri Constitution have also found noneconomic damage caps constitutional under

the same sound reasoning set forth in *Adams.*

The Nebraska Constitution provides that "[t]he right of trial by jury shall remain inviolate...." NEB. CONST. art. I, sec. 6. The Supreme Court of Nebraska mirrored this Court's reasoning in *Adams* in holding that a cap on total damages for medical malpractice actions did not violate its constitution's right to a jury trial because "the trial court applies the remedy's limitation only after the jury has fulfilled its factfinding function." *Gourley ex rel. Gourley v. Neb. Methodist Health Sys.,* 265 Neb. 918, 663 N.W.2d 43, 75 (2003).

Likewise, Idaho's constitution provides that "[t]he right of trial by jury shall remain inviolate...." IDAHO CONST. art. I, sec. 7. The Supreme Court of Idaho analyzed the statutory cap imposed on noneconomic damages in the same way this Court did in *Adams.* The Idaho court noted that the right to have a jury assess and award noneconomic damages existed at the adoption of the Idaho constitution, but that the statutory cap on noneconomic damages did not violate the right to a jury trial as it existed at that time. *Kirkland v. Blaine County Med. Ctr.,* 134 Idaho 464, 4 P.3d 1115, 1118–20 (2000). *Kirkland* reasoned: "The jury is still allowed to act as the fact finder in personal injury cases. The statute simply limits the legal consequences of the jury's finding." *Id.* at 1120. The Idaho Supreme Court held that the legislative cap on noneconomic damages did not violate its constitution because "[t]he legal consequences and effect of a jury's verdict are a matter for the legislature (by passing laws) and the courts (by applying those laws to the facts as found by the jury)." *Id.*

In addition, Ohio's constitution provides that "[t]he right of trial by jury shall be inviolate...." OHIO CONST. art. I, sec. 5. The Supreme Court of Ohio upheld a stat-

utory noneconomic damage cap as constitutional in line with other courts addressing damage caps under same constitutional language. *Arbino v. Johnson & Johnson,* 116 Ohio St.3d 468, 880 N.E.2d 420, 430–32 (2007). *Arbino* reasoned that the Ohio constitution's guarantee to a jury trial applied to those causes of action for which the right existed at common law when the constitution was adopted, and tort actions were such cases. *Id.* at 430–31. Mirroring the reasoning in *Adams, Gourley,* and *Kirkland,* the Supreme Court of Ohio found that the right to a trial by jury "protects a plaintiff's right to have a jury determine all issues of fact in his or her case." *Id.* at 431. The court continued: "So long as the fact-finding process is not intruded upon and the resulting findings of fact are not ignored or replaced by another body's findings, awards may be altered *as a matter of law.*" *Id.* The statutory noneconomic damage cap provided that "[c]ourts must simply apply the limits as a matter of law to the facts found by the jury; they do not alter the findings of facts themselves, thus avoiding constitutional conflicts." *Id.* at 432.

Further, Maryland's constitution provides that the right to a trial by jury "shall be inviolably preserved." MD. CONST. Declaration of Rights, art. 23. In accord with other cases involving constitutional guarantees that the right of a jury trial shall remain "inviolate," the Supreme Court of Maryland upheld the statutory cap on noneconomic damages. *Murphy v. Edmonds,* 325 Md. 342, 601 A.2d 102, 118 (1992). Maryland's constitution also "preserves unimpaired the ultimate historical right [to a jury trial in civil cases] as it existed at common law." *Id.* at 116 (internal quotation marks omitted). The Maryland Supreme Court reasoned, in line with the cases discussed above, that "the jury trial right in civil cases relates to 'issues of fact' in legal actions. It does not extend to

issues of law...." *Id.* In light of that analysis, *Murphy* held:

> [The statutory cap on noneconomic damages] fully preserves the right of having a jury resolve the factual issues with regard to the amount of noneconomic damages. Neither the [statutory] limit on recovery nor the provision that the jury shall not be informed of the limit, interferes with the jury's proper role and its ability to resolve the factual issues which are pertinent to the cause of action.

*Id.* at 117.

The majority opinion is also critical of *Etheridge v. Med. Ctr. Hosps.,* 237 Va. 87, 376 S.E.2d 525 (1989). The argument is that, because the Virginia constitution contains different language than the Missouri Constitution in its guarantee of a jury trial, then the Virginia right to a jury trial is somehow less protective of the right. This is simply incorrect. Although the majority opinion is correct in noting the different language in the two constitutions, Virginia has held that its guarantee to a jury trial secures those rights "that existed at common law," as does the Missouri Constitution. *Id.* at 529; *State ex rel. Diehl v. O'Malley,* 95 S.W.3d 82, 85–89 (Mo. banc 2003) (holding that the right to a jury trial attaches to actions that existed at common law or actions that are analogous to actions that existed at common law). In light of the Virginia Supreme Court's interpretation of its own constitution, there is no ground for this Court to distinguish the right to a jury trial in Virginia from the right to a jury trial in Missouri with regard to statutory damage caps. Although the constitutional language contains superficial differences, the substantive right is essentially the same. This is evident from the Virginia Supreme Court's analysis in *Etheridge.* The court reasoned that "[w]ithout question, the jury's fact-finding

function extends to the assessment of damages." *Etheridge,* 376 S.E.2d at 529. "Once the jury has ascertained the facts and assessed the damages, however, the constitutional mandate is satisfied." *Id.* "Thereafter, it is the duty of the court to apply the law to the facts." *Id.* Just as other courts with constitutional language identical to Missouri's jury trial guarantee have held, the Virginia Supreme Court held:

> A trial court applies the remedy's limitation only *after* the jury has fulfilled its fact-finding function. Thus, [the statutory noneconomic damage cap] does not infringe upon the right to a jury trial because the section does not apply until after a jury has completed its assigned function in the judicial process.

*Id.* The statutory damage cap was held not to infringe on the plaintiff's right to a trial by jury. *Id.*

In addition to the cases that mirror *Adams'* analysis regarding the "inviolate" right to a jury trial, there are other jurisdictions in which such caps are upheld under jury trial guarantees that do not contain "inviolate" language under the same rationale as *Adams. See Boyd v. Bulala,* 877 F.2d 1191, 1196 (4th Cir.1989) ("[O]nce the jury has made its findings of fact with respect to damages, it has fulfilled its constitutional function; it may not also mandate compensation as a matter of law."); *Evans ex rel. Kutch v. State,* 56 P.3d 1046, 1051 (Alaska 2002) ("The decision to place a cap on damages awarded is a policy choice and not a re-examination of the factual question of damages determined by the jury."); *Wright v. Colleton County Sch. Dist.,* 301 S.C. 282, 391 S.E.2d 564, 569–70 (1990) ("A remedy is a matter of law, not a matter of fact. Although a party has the right to have a jury assess his damages, he has no right to have a jury

dictate through an award, the legal consequences of its assessments."); *Judd v. Drezga,* 103 P.3d 135, 144 (Utah 2004) ("The damage cap enacted by the legislature represents law, similar to an element of a claim to which the trial court must comport the jury's factual determinations.").

Further, other states that provide in their constitutions that the right to a jury trial is "inviolate" have upheld statutory caps on recoverable damages under different analysis. *See Samsel v. Wheeler Transp. Servs., Inc.,* 246 Kan. 336, 789 P.2d 541 (1990); *Johnson v. St. Vincent Hosp., Inc.,* 273 Ind. 374, 404 N.E.2d 585 (1980) (overruled on other grounds); *Fein v. Permanente Med. Group,* 38 Cal.3d 137, 211 Cal.Rptr. 368, 695 P.2d 665 (1985).[2]

Other cases in jurisdictions without "inviolate" constitutional language have upheld similar caps under different analysis as well. *See Peters v. Saft,* 597 A.2d 50 (Me.1991); *Robinson v. Charleston Area Med. Ctr., Inc.,* 186 W.Va. 720, 414 S.E.2d 877 (1991); *Davis v. Omitowoju,* 883 F.2d 1155 (3rd Cir.1989).

Not only does *stare decisis* direct that this Court adhere to its previous holding in *Adams,* but *Adams* is also squarely in line with other jurisdictions that have addressed the constitutional validity of statutory caps on noneconomic damages. I would uphold the statutory cap on noneconomic damages in section 538.210.

---

**2.** *Fein* did not expressly address California's right to a jury trial.