IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
 MARIA DEL CARMEN )
 ORDINOLA VELAZQUEZ, )
 Appellant-Respondent, )
 ) WD83485 (consolidated with
 v. ) WD83490, WD83722 and
 ) WD83781)
 JENNIFER REEVES, M.D., et al, )
 Respondent-Appellants. ) FILED: February 16, 2021
 Appeal from the Circuit Court of Jackson County
 The Honorable John M. Torrence, Judge
 Before Division One: Alok Ahuja, P.J., and Thomas H. Newton
 and Thomas N. Chapman, JJ.
 In this medical malpractice case, a jury in the Circuit Court of Jackson

County awarded Maria del Carmen Ordinola Velazquez1 $30,000 in economic

damages and $1,000,000 in non-economic damages. Pursuant to § 538.210,2 the

circuit court reduced Ordinola’s non-economic damages award from $1,000,000 to
$748,828, and entered judgment accordingly. Ordinola appeals the reduction of the

damages award, contending that the damages limitations contained in § 538.210

 1 Appellant’s last name is spelled inconsistently in the record, sometimes as
“Velasquez,” and sometimes as “Velazquez.” The parties’ briefing spells Appellant’s last
name “Velazquez,” and refers to her by her paternal surname of “Ordinola.” We follow the
usage in the parties’ briefing.
 2 Statutory citations refer to the 2016 edition of the Revised Statutes of
Missouri. Section 538.210 was amended in 2017 and again in 2020. See H.B. 452, 99th
Gen. Assembly, 1st Reg. Session (2017); S.B. 591, 100th Gen. Assembly, 2d Regular Session
(2020). Although certain subsections of § 538.210 were renumbered, the 2017 and 2020
amendments did not substantively alter any of the provisions which are at issue in this
appeal.
are unconstitutional. The defendants also appeal, alleging errors at trial, and in the

manner in which the circuit court applied § 538.210.

 Ordinola has filed a motion to transfer this case to the Missouri Supreme

Court. We conclude that her appeal raises a real and substantial challenge to the

constitutionality of § 538.210, and thereby invokes the Supreme Court’s exclusive

appellate jurisdiction under Article V, § 3 of the Missouri Constitution. We

accordingly grant Ordinola’s motion to transfer, and order that the case be

transferred to the Supreme Court pursuant to Article V, § 11 of the Missouri

Constitution.

 Factual Background
 On August 24, 2017, Ordinola filed a medical malpractice action against

multiple physicians and against University Physician Associates, which employed

several of the individual defendants. In her petition, Ordinola alleged that the

physicians had acted negligently in multiple respects in connection with the

delivery of her child, and her post-partum care, at Truman Medical Center in

Kansas City in September 2015. Ordinola alleged that as a result of the physicians’

negligence, she was required to undergo multiple surgeries, and experienced a

variety of serious and permanent injuries, including cardiac arrest, massive

internal bleeding, a complete hysterectomy, a laceration to the bladder, permanent

leakage of urine through the vagina, and pain during urination and sexual

relations.

 Ordinola’s petition anticipated the potential application of the damages

limitations contained in § 538.210 to her case. The petition alleged that the

damages caps in § 538.210 were unconstitutional on a variety of grounds. Among

other things, Ordinola’s petition alleged that application of § 538.210 would deny

her the right to a trial by jury guaranteed in Article I, § 22(a) of the Missouri

 2
Constitution, as interpreted by the Missouri Supreme Court in Watts v. Lester E.

Cox Medical Centers, 376 S.W.3d 633 (Mo. 2012).

 The case was tried to a jury in October 2019. At the conclusion of trial, the

jury returned a verdict allocating 100% of the fault among the defendants (except

defendant Dr. Susan Mou, whom the jury found to bear no fault). The jury awarded

Ordinola damages totaling $1,030,000: $30,000 in past economic damages;

$300,000 in past non-economic damages; and $700,000 in future non-economic

damages.

 The defendants filed motions for remittitur, asking the circuit court to reduce

the total non-economic damage award to $400,000 – the cap specified in

§ 538.210.2(1) for cases involving non-catastrophic personal injuries. Ordinola filed

suggestions in opposition to the defendants’ remittitur motions, renewing her

assertion that the statutory damages cap is unconstitutional. In the alternative,

Ordinola asked the circuit court to apply the higher cap found in § 538.210.2(2) for

cases involving “catastrophic personal injury,” which would limit her award of non-

economic damages to $700,000 rather than $400,000.

 On January 6, 2020, the circuit court entered its judgment. The court

refused to find § 538.210 unconstitutional. The court agreed with Ordinola,
however, that the case involved “catastrophic personal injury” subject to the higher

cap found in § 538.210.2(2). The court accordingly reduced the non-economic

damages awarded by the jury from $1,000,000 to $748,828 (the amount of the

relevant cap at the time of the jury verdict, after application of the cost-of-living

escalator in § 538.210.8).

 All parties (except Dr. Mou) appeal from the circuit court’s judgment.

 On June 4, 2020, Ordinola filed a motion to transfer the appeal to the

Missouri Supreme Court, contending that her constitutional challenge to § 538.210
invoked the Supreme Court’s exclusive appellate jurisdiction. The motion was

 3
taken with the case. Although the defendants did not file any written response to

Ordinola’s motion to transfer, at oral argument they acknowledged that Ordinola’s

constitutional challenge to § 538.210 invokes the Missouri Supreme Court’s

exclusive appellate jurisdiction.

 Discussion
 Under Article V, § 3 of the Missouri Constitution, the Missouri Supreme

Court has “exclusive appellate jurisdiction in all cases involving the validity of a . . .

statute . . . of this state.”

 On appeal, Ordinola directly challenges the constitutionality of § 538.210,

contending that it violates the right to trial by jury guaranteed by Article I, § 22(a)

of the Missouri Constitution.3 On its face, her constitutional claim is the sort of

claim which falls within the Supreme Court’s exclusive appellate jurisdiction. See

Accident Fund Ins. Co. v. Casey, 536 S.W.3d 360, 364 (Mo. App. W.D. 2017) (“the

[Supreme] Court's ‘exclusive appellate jurisdiction is invoked when a party asserts

that a state statute directly violates the constitution either facially or as applied’”;

quoting McNeal v. McNeal-Sydnor, 472 S.W.3d 194, 195 (Mo. 2015)).

 “‘The mere assertion that a statute is unconstitutional does not alone deprive

this Court of jurisdiction,’” however. Accident Fund, 536 S.W.3d at 365 (quoting

Sharp v. Curators of Univ. of Mo., 138 S.W.3d 735, 737 (Mo. App. E.D. 2003)).

Instead, “[j]urisdiction of cases involving the validity of a state statute vests

exclusively in the Supreme Court only if the claim has been properly preserved and

the allegation is real and substantial and not merely colorable.” Id. (citing Sharp,

138 S.W.3d at 783); see also, e.g., Donaldson v. Mo. State Bd. of Registration for

Healing Arts, No. WD83217, 2020 WL 3697769, at *2 (Mo. App. W.D. July 7, 2020).

 3 Although her petition alleged that § 538.210 was unconstitutional on
multiple grounds, Ordinola has alleged on appeal only that the statute violates her
constitutional right to a jury trial.

 4
 We first consider whether Ordinola properly preserved her constitutional

argument in the circuit court. “‘[I]f the constitutional challenge has not been

properly preserved for appellate review,’ the claim is not ‘real and substantial,’ and

‘jurisdiction remains with [the appellate] court.’” Ritter v. Ashcroft, 561 S.W.3d 74,

84 (Mo. App. W.D. 2018) (quoting Joshi v. St. Luke's Episcopal Presbyterian Hosp.,

142 S.W.3d 862, 866 (Mo. App. E.D. 2004)). “To properly preserve a constitutional

issue for appellate review, the issue must be raised at the earliest opportunity and

preserved at each step of the judicial process.” Sharp, 138 S.W.3d at 738 (citations

omitted). “‘[T]he issue must not only have been presented to the trial court, but the

trial court must have ruled thereon.’” Id. (quoting Estate of McCluney, 871 S.W.2d

657, 659 (Mo. App. W.D. 1994)). The point raised on appeal must also be based

upon the same theory advanced at the circuit court. Id.

 Ordinola properly raised and preserved the constitutional issue in the circuit

court. She challenged the constitutionality of § 538.210 in her original petition

(before she had even been awarded damages, and therefore before the applicability

and validity of § 538.210 was even in issue). After the jury returned its verdict and

the defendants filed motions for remittitur asking the circuit court to apply

§ 538.210, Ordinola renewed her constitutional challenges, including her claim that
the statute violates the right to trial by jury guaranteed by Article I, § 22(a) of the

Missouri Constitution, as interpreted in Watts v. Lester E. Cox Medical Centers, 376

S.W.3d 633, 641 (Mo. 2012). Even disregarding the allegations in Ordinola’s

petition, she timely raised her constitutional argument by asserting it in response

to the defendant’s remittitur motion. See Dodson v. Ferrara, 491 S.W.3d 542, 553

(Mo. 2016) (wrongful-death plaintiffs properly preserved their challenge to the

constitutionality of § 538.210 when they raised their constitutional arguments in

response to the defendants’ post-verdict motions for application of the statutory
caps). In addition, the circuit court’s judgment ruled on the constitutional issue on

 5
the merits. The court expressly denied Ordinola’s claim that § 538.210 violates the

Missouri Constitution, and applied the statute to reduce her jury-assessed non-

economic damages. On appeal, Ordinola raises the same constitutional challenge to

§ 538.210 which she timely asserted in the circuit court.

 We next consider whether Ordinola’s constitutional argument is real and

substantial.

 In determining whether a constitutional claim is real and
 substantial, we make a preliminary inquiry as to whether it presents a
 contested matter of right that involves fair doubt and reasonable room
 for disagreement. If the initial inquiry discloses the claim is so legally
 or factually insubstantial as to be plainly without merit, the claim may
 be deemed merely colorable. [¶] In the context of the “not merely
 colorable” test, the word “colorable” means feigned, fictitious or
 counterfeit, rather than plausible.
Donaldson, 2020 WL 3697769, at *3 (citations and internal quotation marks

omitted).

 In Watts, the Missouri Supreme Court addressed the constitutionality of an

earlier version of § 538.210, which also capped non-economic damages in medical

malpractice cases. The Court held that common-law medical negligence actions

“fall[ ] into th[e] category” of civil actions which have been tried by juries since the

first Missouri Constitution was adopted in 1820, and thus, that the right to a jury
trial found in Article I, § 22(a) of the Missouri Constitution attached to such actions.

Watts, 376 S.W.3d at 638. The Court also held that the earlier version of § 538.210

“directly curtails the jury's determination of damages and, as a result, necessarily

infringes on the right to trial by jury when applied to a cause of action to which the

right to jury trial attaches at common law.” Id. at 640. The Court accordingly held

that the earlier version of § 538.210 was unconstitutional. Watts overruled the

Court’s earlier decision in Adams by and through Adams v. Children's Mercy

Hospital, 832 S.W.2d 898, 907 (Mo. 1992), which had held that the limitation on

 6
non-economic damages in § 538.210 did not violate the Constitution’s guarantee of a

trial by jury. Watts, 376 S.W.3d at 645-46.

 Ordinola argues that the invalidity of the current version of § 538.210 is

established by Watts, and by the Supreme Court’s subsequent decision in Lewellen

v. Franklin, 441 S.W.3d 136 (Mo. 2014), which followed Watts and found a cap on

punitive damages to be unconstitutional as applied to common-law fraud actions. If

the result in this case were clearly dictated by the Supreme Court’s prior decisions

in Watts and Lewellen, we would arguably have jurisdiction to decide Ordinola’s

constitutional argument. “‘If the United States Supreme Court or Missouri

Supreme Court has addressed a constitutional challenge, the claim is merely

colorable and the intermediate appellate court has jurisdiction.’” D.E.G. v. Juvenile

Officer of Jackson Cnty., 601 S.W.3d 212, 215 n.2 (Mo. 2020) (quoting State v.

Henry, 568 S.W.3d 464, 479 (Mo. App. E.D. 2019)).

 The constitutionality of the current version of § 538.210 is not necessarily

controlled by Watts and Lewellen, however. Watts involved a common-law claim for

negligence by health-care practitioners, while Lewellen involved a common-law

fraud claim. The current version of § 538.210 purports to repeal the common-law

cause of action for medical malpractice involved in Watts, and replace it with a new
cause of action created by the legislature. Section 538.210.1 declares that “[a]

statutory cause of action for damages against a health care provider for personal

injury or death arising out of the rendering of or failure to render health care

services is hereby created, replacing any such common law cause of action.” As part

of the same 2015 legislation which amended § 538.210, the General Assembly also

amended § 1.010, which generally provides that “[t]he common law of England . . .

[is] the rule of action and decision in this state.” § 1.010.1. The 2015 legislation

adds a new subsection to § 1.010, in which “[t]he general assembly expressly
excludes from this section the common law of England as it relates to claims arising

 7
out of the rendering of or failure to render health care services by a health care

provider, it being the intent of the general assembly to replace those claims with

statutory causes of action.” § 1.010.2.

 We recognize that, other than imposing limitations on the damages to which

a plaintiff is entitled, the so-called “statutory cause of action” for medical

malpractice created by the legislature in 2015 appears to be identical to the

common-law cause of action which previously existed. The “new” cause of action

appears to be subject to the same substantive standards, and the same procedural

framework, as the earlier common-law action. Nevertheless, if the damages caps in

the current version of § 538.210 are viewed as limitations on a statutory cause of

action, rather than on a common-law claim, that could have important implications

for Ordinola’s constitutional argument.

 The Missouri Supreme Court has held that damages limitations may

permissibly be applied to certain statutory claims, even though those same

limitations would be unconstitutional as applied to common-law causes of action.

In Sanders v. Ahmed, 364 S.W.3d 195 (Mo. 2012), the Missouri Supreme Court held

that the damages limitations contained in an earlier version of § 538.210 were

constitutional as applied to a statutory wrongful-death claim. In Dodson v. Ferrara,
491 S.W.3d 542 (Mo. 2016), wrongful-death plaintiffs argued that a later version of

§ 538.210 was unconstitutional; in making this argument, the plaintiffs argued that

the analysis in Watts, rather than the analysis in Sanders, controlled their case.

 The Missouri Supreme Court in Dodson explained that the Watts analysis

was inapplicable to a cause of action created by statute, and that the legislature had

greater power to limit recoverable damages when dealing with a statutory, rather

than a common-law, cause of action. The plurality opinion in Dodson explained:

 Watts involved a common law claim for personal injury (non-wrongful
 death) medical malpractice filed by a mother on behalf of her son. . . .

 8
 Watts did not overrule Sanders. Instead, Watts differentiated
 common law causes of action as not being subject to legislative limits
 on the right to trial by jury. By its own terms, Watts applies to
 “cause[s] of action to which the right to jury trial attaches at common
 law.” [376 S.W.3d] at 640. As the Court noted in Sanders, wrongful
 death actions were not recognized at common law in 1820 in Missouri
 but, instead, are creatures of statute. Because Plaintiffs' action is for
 wrongful death, Sanders provides the correct analysis of their
 constitutional challenge.
 ....
 . . . Sanders and Watts set forth a different analysis for
 determining whether the constitutional right to a jury trial is violated
 by legislative caps on recoveries. In Sanders, the Court held:
 The legislature has the power to define the remedy
 available if it creates the cause of action. . . .
 [T]he legislature has the authority to choose what
 remedies will be permitted under a statutorily created
 cause of action.
 The legislature in so doing, at least in regard to a
 statutorily created cause of action limited “the substance
 of the claims themselves,” as it has a right to do in setting
 out the parameters of a statutory cause of action.
 Sanders, 364 S.W.3d at 203 [internal citations omitted]. As this Court
 stated in Sanders:
 . . . The General Assembly has the right to create causes
 of action and to prescribe their remedies. The General
 Assembly may negate causes of action or their remedies
 that did not exist prior to 1820. . . .
 364 S.W.3d at 205.
 In Watts, on the other hand, the Court held that such caps
 “infringe[ ] on the right to trial by jury when applied to a cause of
 action to which the right to jury trial attaches at common law.” 376
 S.W.3d at 640 [emphasis added by Dodson].
Dodson, 491 S.W.3d at 555-56 (other citations and internal quotation marks

omitted; footnote omitted).

 The concurring opinion in Dodson similarly recognized a sharp distinction
between the constitutionality of statutory damages caps, depending on whether the

 9
limitations apply to statutory, or instead to common-law, causes of action. See id. at

571 (Fischer, J., concurring in result) (“the constitutional jury trial right prohibits

the enforcement of statutory caps on amounts recoverable on a common law cause of

action but is not offended by such caps on amounts recoverable under a statutory

cause of action”); see also Estate of Overbey v. Chad Franklin Nat'l Auto Sales N.,

LLC, 361 S.W.3d 364, 376 (Mo. 2012) (holding that a cap on the damages

recoverable in an action brought under the Missouri Merchandising Practices Act

was constitutional, because the Legislature “limited ‘the substance of the claims

themselves,’ as it has a right to do in setting out the parameters of a statutory cause

of action”; citation omitted).

 The Missouri Supreme Court has not considered the precise question that

Ordinola raises here: whether the legislature may constitutionally limit the

damages recoverable on a cause of action which did exist at common law, but which

has now been “replaced” by a statutory cause of action. The legal effect of the

legislature’s rechristening of a common-law cause of action as “statutory” has not

previously been decided by the Supreme Court. Because this case does not simply

involve a rote application of either the Watts-Lewellen line of cases, or instead the

Dodson-Sanders line of cases, Ordinola’s constitutional claim raises “a contested
matter of right that involves fair doubt and reasonable room for disagreement.”

Donaldson, 2020 WL 3697769, at *3 (citations and internal quotation marks

omitted). By seeking transfer, Ordinola has herself recognized that the

constitutional issue she raises differs from the question decided in Watts or in other

existing Supreme Court precedent, and must be addressed on appeal by the

Supreme Court. Because Ordinola’s constitutional challenge is not “merely

colorable,” it falls within the exclusive appellate jurisdiction of the Missouri

Supreme Court.

 10
 We recognize that, in their appeals, the defendants raise a series of non-

constitutional issues concerning alleged errors at trial, and concerning the circuit

court’s application of § 538.210. Because Ordinola’s challenge to the

constitutionality of § 538.210 is “real and substantial” and triggers the Supreme

Court’s exclusive jurisdiction, however, we cannot decide any issue in the case,

including the non-constitutional claims asserted by the defendants. “Even if some

but not all of the issues presented in this case fall within the exclusive jurisdiction

of the Supreme Court, appeals are not bifurcated and the ‘appeal is properly lodged

in the court having jurisdiction over all issues in the case.’” SEBA, LLC v. Dir. of

Revenue, No. WD83083, 2020 WL 3067497, at *4 (Mo. App. W.D. June 9, 2020)

(quoting State ex rel. Union Electric Co. v. Pub. Serv. Comm'n, 687 S.W.2d 162, 165

(Mo. 1985)); see also, e.g., In re Estate of Austin, 389 S.W.3d 168, 170 n.9 (Mo. 2013);

State v. Nathan, No. ED96851, 2012 WL 5860933, at *3 (Mo. App. E.D. Nov. 20,

2012) (“When the Missouri Supreme Court has exclusive jurisdiction, its jurisdiction

extends to all issues in the case.” (citations omitted)); Snodgrass v. Martin &

Bayley, Inc., No. ED87304, 2006 WL 1735246, at *3 (Mo. App. E.D. June 27, 2006)

(where "this Court lacks jurisdiction, . . . we are without the power to reach any

issue in the case").
 Conclusion
 Because Ordinola’s challenge to the constitutionality of § 538.210 was

properly preserved for appellate review and presents a real and substantial

question, this case falls within the exclusive appellate jurisdiction of the Missouri

Supreme Court under Article V, § 3 of the Missouri Constitution. We accordingly

grant Ordinola’s motion to transfer, and order that the case be transferred to the

Missouri Supreme Court for disposition. See Mo. Const. Art. V, § 11.

 11
 Alok Ahuja, Judge
All concur.

 12